# Murdoch's Appeal.

A testator devised real estate to his niece C. and her daughter S., which was subject to a ground-rent; and gave an annuity to his wife, to his brother, and to his niece C., payable out of the rents of his real estate, including that devised to C. and her daughter; and then further directed that, after the death of his wife, the funds which should have been saved from the income of his estate, with the accruing rents upon his real estate, should be applied to the purchase and extinguishment of the ground-rent, payable out of the property devised to his niece C. and her daughter S.; and also directed that the residue of his real estate not devised to C. and her daughter should be sold after the expiration of two years, and out of the proceeds gave a number of pecuniary legacies to his relatives.

The executor collected the rents and paid the annuities, and two years after the death of the testator's widow sold the real estate as directed by the will, having in the mean time received the rents from it, including that devised to C. and her daughter S.: *Held*,

1. That C. and her daughter S. were entitled to the rents, received by the executor, for the property devised to them, after the death of the widow.

2. That on a deficiency of assets, the rents accrued on the balance of the real estate, after the death of the widow, was to be applied to the payment of the ground-rent on the property devised to C. and her daughter, in preference to the legatees.

3. In construing a will, where there appears an intention on the part of the testator that one devisee or legatee shall be preferred to another, as regards the certainty of payment, the latter will abate on a deficiency of assets to pay all.

APPEAL from the Orphans' Court of *Allegheny county*.

William W. Fearns, being the owner of a large real estate, and possessed of valuable personal property in the city of Pittsburgh, on the 10th day of January 1849, made his last will and testament in writing which, after his death, on the 13th of March 1849, was duly proved, and letters testamentary issued to Samuel Robinson, one of the executors appointed in the will. The will contained sixteen clauses, of which the following is a synopsis:—

*First.* The testator bequeaths $300 to his executors, to be expended in the purchase of a burial lot and tombstone.

*Second.* He directs his just debts and funeral expenses to be paid out of his estate, as soon as may be convenient.

The third, fourth, fifth, sixth, and seventh clauses, are specific bequests of furniture, wearing apparel, &c., and need not be noticed particularly.

The ninth clause creates an annuity to his wife during life, to be paid out of the income of his real estate, and after her decease, her funeral expenses to be paid out of the funds on hand.

The tenth provides, after the payment of all insurance, taxes, and ground-rents, and the discharge of all debts, an annuity to his brother, Crumlein Fearns, of one hundred dollars, and to his

niece, Catharine W. Murdoch, an annuity of two hundred dollars, each payable during the life of the testator's wife.

The twelfth devises the property in the Diamond or Market Square, in this city, to his niece, Catharine W. Murdoch, and her daughter, Sarah F., subject to the provisions therein contained.

"*Thirteenth*. After the death of my wife Sarah, I do order and direct that the funds which have been saved, and the rents accruing from my real estate, shall be applied to the purchase and extinguishment of the ground-rents payable out of the property devised to my niece, Catharine W. Murdoch, and her daughter, Sarah F., so that they may have said premises in fee simple, clear of that encumbrance.

"*Fourteenth*. After the expiration of two years from the death of my wife Sarah, I do order and direct that my house and lot and store on Market street, and my house and lot on the corner of Third and Grant streets, in the city of Pittsburgh, shall be exposed to public or private sale, by my executors hereafter named, or the survivor of them, and sold to the highest and best bidder. And on such sale or sales being approved by the Orphans' Court of Allegheny county, I do hereby authorize and empower my said executors, or the survivor of them, to make, execute, and deliver to the purchaser or purchasers, good and sufficient deeds of conveyance for the said premises, in fee simple, and the proceeds of such sale or sales, together with all the residue of my estate, I order and direct to be distributed as follows, to wit." Then follow the names of the legatees, and the legacy given to each respectively, viz.: Crumlein Fearns, $500; Charles Fearns, $1000, to be applied to the purchase of a farm; to Catharine Fearns, $500; to Letty Wakefield, $500; James Kilroy, $1000; Charles Kilroy, $1000; Robert Wakefield, Jr., $300; Samuel Fearns, $500; Charles Fearns, $1000; Fletcher Fearns, $1000; to the surviving children of his deceased sister, Mary Ann Macklin, $3000, to be divided equally between them; Margaret Martin, $500; Mary Brown, $200; James Ross, $200; Margaret Barker, $200; Charles Craig, $100; said legatees being generally collateral relatives, sisters, brothers, nephews, and nieces of the testator.

*Fifteenth*, directed how his stock of merchandise should be disposed off.

*Sixteenth*, appointed his wife Sarah Fearns, Catharine W. Murdoch and Samuel Robinson, executrixes and executor of his will.

Sarah Fearns the widow died 10th February 1851, and up to that period, the funds received by the executor from the rents of real estate amounted to $3832.45, as appeared by the accounts filed to October Term 1850, and June Term 1851. The annuities to the widow Sarah Fearns, to Catharine W. Murdoch, and to Crumlein Fearns, up to the death of the widow, amounted to $2510;

[Murdoch's Appeal.]

and the balance of the rents was applied to ground-rents, the payment of accruing taxes, insurance, &c., on the property.

The rents of the real estate of the testator, for the two years subsequent to the death of the widow, as contained in the accounts of the administrators *de bonis non* with the will annexed, filed to June Term 1852, and October Term 1853, amounted to $3856.93, and these were charged in the account as part of the estate. The real estate was then sold, the amount of the sale also charged in these accounts—a general balance of the amount in the hands of the administrator struck, and the account confirmed. The estate was insufficient to purchase the ground-rent against the property devised to Mrs. Murdoch and the daughter, and pay the legacies given by the will. An auditor was appointed by the court to make distribution.

For Mrs. Murdoch, it was contended that by the 13th clause of the will, the surplus of the rents received during the life of testator's widow, over and above what was necessary to pay the annuities, and the whole of the rents for the two years succeeding her death, were to be applied to the purchase of the ground-rent charged upon the property devised to her and her daughter.

For the legatees, it was insisted that the whole balance was made up of the proceeds of the real estate sold, and that by the 14th clause of the will, it was specifically bequeathed for the payment of the legacies given in the same clause, and could not be appropriated to any other object; and that, on failure of sufficiency of assets to pay the ground-rent and the legacies, the encumbrance upon the property must be borne by the devisees.

The auditor held:—

" 1. That the balance in the accountant's hands must be treated as the balance of the proceeds of the real estate directed to be sold, by the 14th clause of the will, remaining after satisfying the legal liabilities of said fund; and

" 2. That the order and direction of the testator, in the 14th clause, to divide said proceeds among the legatees therein named, is a specific bequest of the proceeds of said real estate, to pay those legacies, and that until they are satisfied no portion of the fund can be otherwise appropriated."

This report was afterwards confirmed by the court. And from the decree of confirmation, A. C. Murdoch, guardian of Sarah F. Murdoch, and assignee of Crumlein Fearns, appealed.

*A. W. Loomis*, for appellant.

*Stowe* and *Hampton* (with whom were *Marshall* and *Brown*), for appellees.

The opinion of the court was delivered by

[Murdoch's Appeal.]

Lowrie, J.—Subject to some small exceptions, the law charges all of a decedent's estate with the payment of his debts, and this testator does so expressly by his will. Yet it is quite apparent that he knew that, after paying his debts, there would be a considerable surplus, and so there is. But his expectations concerning the amount of that surplus are disappointed, and some of his directions can be only partly fulfilled, and some not at all.

The rents of all his property, except one house directed to be sold immediately, appear to have been necessary to pay the annuities; and as these are, by the clauses 9, 10, and 11, expressly charged upon the rents, the executor was entitled to receive all these rents during the life of the widow, notwithstanding an apparently present devise of one of the houses to Mrs. Murdoch. At the death of the widow, two of the annuities were to cease, the widow's and Mrs. Murdoch's, and then Mrs. Murdoch was to have the house charged with the third annuity, the one to the testator's brother.

The testator seems to have expected that, after paying his debts and the annuities, he would have some funds saved out of the sale of his Diamond Alley house and the goods in his store; and in clause 13, he provides for the application of these funds; but it turns out that none were saved. There seems, in fact, to have been a deficiency; and on this account the executors continued to receive the rents of the house devised to Mrs. Murdoch, as well as of the others.

There being a deficiency in meeting the testator's intentions, there must be an abatement somewhere. It cannot be in the widow's annuity; for we cannot suppose he would intend this: 24 *State R.* 22. It cannot be in the other annuities; for they were to commence immediately on the testator's death, without waiting to ascertain the state of his affairs. It must therefore fall upon the gifts intended by clauses 12, 13, and 14, or some of them. Our question is, on which of them? The residue in clause 15 is altogether fruitless.

This question is one of intention: 1 *Rop. on Leg.* 253. We do not take the testator's intention as our guide in the interpretation of his will; for his intention is the matter sought for by means of interpretation. To use his intention as a guide we must first have it; and having it, we no more seek it by interpretation. Yet having learned the intention in one part, it may help us to that in another. The word construction is sometimes used differently from interpretation. When the intention is ascertained by interpretation, and by reason of unanticipated events, it cannot be carried out, then, to save the intention as far as possible, we must, by construction, fix the approximate practicable intention, so as to decide what the testator would have expressed, had he anticipated the state of things actually existing. In the performance

of this duty of construction, his intention must be our guide. If we find that one devisee or legatee was intended to be preferred to another as regards certainty of payment, then the latter must abate. If no such intention appears, both must abate rateably.

When the fund provided for debts and preferred legacies failed, the three houses devised in clauses 12 and 14, or some of them, became substantially the residuary estate, and bound to bear the deficiency. In what order are they chargeable? Of course they are all equally chargeable in relation to creditors; but in relation to each other, one may have a preference in the testator's intention. It seems to us that there is such a preference manifested in favor of the devise to Mrs. Murdoch and her daughter; for it is a present devise, subject only to such rents during the life of the testator's widow as were needed to pay annuities; on the widow's death Mrs. Murdoch's own annuity ceases, because then she is to have the house entirely to herself, and then it is charged with a life annuity, not abateable, in favor of the testator's brother; and besides, she and her daughter are evidently the chief objects of the testator's bounty. Whereas the other houses were to remain two years after the widow's death in the hands of the executor, their rents were to serve in part to complete the devise to Mrs. Murdoch, and then they were to be sold and the proceeds divided among at least sixteen relatives and friends of the testator. We think therefore that the devise to Mrs. Murdoch and her daughter is preferred in the will to the legacies last named, and that these alone must abate. They are in fact the residuary legacies, and the deficiency falls on them: 24 *State R.* 22.

The rents of these three houses appear to have been applied to the payment of debts.; as a question of distribution, how ought they to be applied? Not to speak of the residue fruitlessly intended to satisfy the 16th clause, the testator, by clauses 11 and 13, provides that the " funds saved," and also the rents accruing after the death of his widow (so we read it), shall be applied to the purchase of the ground-rent on the house devised to Mrs. Murdoch and her daughter, so that they might have it clear of that encumbrance. Possibly mere general legacies would have to abate in order to supply the deficiency of the fund intended for the redemption of the ground-rent; but we think that specific ones would not.

As between the rents and the devise to sell, so as to pay the legacies of clause 14; which must abate? The rents of the two houses devised by that clause, without speaking of the funds that failed, were specifically devised for the redemption of the ground-rent. The executors might very well apply them to the payment of the debts and preferred legacies, provided they could have other funds afterwards by which they might be replaced. The purpose to which the rents were devoted was merely in furtherance and

[Murdoch's Appeal.]

completion of the devise to Mrs. Murdoch; and for the reasons already given, they were not abateable in favor of the legatees under clause 14. If the executor or the administrator continued in the receipt of the rent of Mrs. Murdoch's house after the death of the widow, she is entitled to claim back the net amount in the distribution. It was merely a provisional and *pro tempore* abatement.

The confirmation by the court of the executor's accounts, proves that they are true; but it does not prevent the court from going back into all the accounts, and examining into all legacies paid and legacies taken to pay debts, in order to get the data for a final distribution.

We have not all the accounts before us, and therefore cannot make a final decree in the matter; but must refer the cause back to the Orphans' Court for the further proceedings.

DECREE.—The decree of the Orphans' Court confirming the distribution reported by the auditor is reversed; and it is now here ordered and decreed, that the cause be remanded to the said court, with directions to refer the matter back to the same auditor or another, whose duty it shall be to report to the said court a new schedule of distribution, allowing to Mrs. Murdoch the rents collected by the executor and administrator out of the house devised to her for life and to her daughter, and accruing after the death of the widow; and appropriating the rents collected from the houses devised in clause 14 of the will and accruing after the widow's death to the purchase of the ground-rent, or a part thereof, on the house devised to Mrs. Murdoch and her daughter, if the same can be bought at a fair price, and, if not, to report a plan for securing the amount of rents so appropriated, for the use of the said Mrs. Murdoch and her daughter, according to their respective interests under the will; and finally, distributing the balance rateably among the legatees of clause 14; and upon the coming in of the report, the said court shall proceed in relation thereto according to law.