# Appeal of the Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustees, &c.

## Waln's Estate.

1. In the distribution of the estate of a testator, whose assets after payment of debts are sufficient to pay the specific, but not the general legacies, the general rule is that the latter are subject to a proportional abatement. The Act of February 24th, 1834, sec. 48, Br. Purd. (ed. of 1885), p. 554, pl. 227, providing for such abatement " unless it shall be otherwise provided by the will " is declaratory of the common law rule.

2. The intention of a testator to give certain general legacies a priority in right over others cannot be presumed, but must clearly appear either by the express words of the will or from a fair construction of it. It must be founded in the testator's apprehension of an actual deficiency of assets, which indicates an intended *priority in right ;* and not in the apprehension of a delay in distribution, which indicates merely an intended *priority in payment.*

3. A testator after directing the payment of his debts devised his town house and furniture to his sister, and directed that the incumbrances on it should be paid off by his executors. He then devised to his brother his country seat " provided, nevertheless, that the property bequeathed shall be subject to sale in whole or in part, as the case may require, to enable the executors to carry out fully the previous provisions of this will, it being my intention that each bequest shall be fully carried out in the order in which it appears in this my last will and testament, as the funds derived from my estate may permit." The testator then gave several general legacies.

   *Held,* there being a deficiency of assets, that the testator intended no preference among these latter bequests, and that they must abate proportionately.

April 9th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL from the Orphans' Court of *Philadelphia county :* Of January Term 1885, No. 135.

Appeal of the Pennsylvania Company for Insurances on Lives and Granting Annuities, trustees under the will of Lewis Waln for Susan Israel, a legatee, from a decree of the Orphans' Court of Philadelphia, directing an abatement of the legacy to said Susan Israel, and dismissing exceptions filed by her trustees to the adjudication upon the account of R. Rundle Smith, the executor of said Lewis Waln, deceased.

The following facts appeared at the adjudication of the fourth and final account of R. Rundle Smith, executor of Lewis Waln, deceased, before ASHMAN, J. The testator died

in December, 1863, leaving a will dated April 22d, 1858, and a codicil dated August 27th, 1863, in the following words:

I order and direct that my just debts funeral expenses and the Collateral Inheritance tax on my whole estate be paid by my Executors hereinafter mentioned from the proceeds of the Estate not specially devised and that the Executors shall retain the sum of one thousand dollars each in compensation of their services as such, I hereby give devise and bequeath to my sister Phebe L. Waln my house lot and stable No. 914 Walnut street at the corner of Raspberry street together with all the furniture and other personal property therein contained at the time of my death except the books and oil paintings. The books I bequeath to my nephew Robert W. Ryerss—the paintings I bequeath to my sister Phebe L. Waln during her life and afterwards to my brother William Waln during his life and on the death of the Survivor I bequeath the portraits of my father to my nephew Robert W. Leaming—the portrait of Judge Morgan to my nephew Robert W. Ryerss and the portrait of Washington by G. Stuart I bequeath to the Philadelphia Library Company of which I have been a director during many years and in case of any incumbrance being on the Real Estate above devised, it is my will that the same shall be discharged as soon as practicable and I hereby direct my Executors to pay from the general fund of the Estate the interest on such incumbrance so long as it shall exist and all taxes which may be levied on the said Estate for the year during which I may die. So that my sister may hold the said Estate in fee simple free from all incumbrances and free from any claim for interest or taxes.

I give devise and bequeath to my brother William Waln my Country seat called Walngrove in the twenty-third ward of the City of Philadelphia with the adjoining grounds comprising about fifteen acres being that portion of my estate in the twenty-third ward, not leased for farming purposes together with all the personal property therein contained at the time of my death excepting the above mentioned oil paintings *Provided nevertheless that the property bequeathed shall be subject to sale in whole or in part as the case may require, to enable the Executors to carry out fully the previous provisions of this will it being my intention that each bequest shall be fully carried out in the order in which it appears in this my last Will and Testament as the funds derived from my estate may permit.* The remainder of the Real Estate in the twenty-third ward I hereby direct to be sold at public or private Sale as the Executors may deem expedient within two years after my decease authorizing my said Executors to sell the said estate in whole or in part according to their discretion provided the whole be

disposed of within the time mentioned.   To Perry Harris and Henderson Davis men of colour long in my employ as domestics I bequeath in consideration of their faithful services the sum of two hundred dollars each.

I give bequeath and devise to the Pennsylvania Company for Insurance on Lives and Granting Annuities, the sum of Ten thousand dollars in trust to invest the same in well secured mortgages on Real Estate in the City of Philadelphia or in Loans of the said City or of the State of Pennsylvania for the use of my niece Susan Israel—paying to her the interest on the investment as it accrues during her life and the principal to her sisters Phebe W. Bell and Mary L. Smith share and share alike at her death in case of her leaving no lineal descendants otherwise the principal to be paid to her child or children and in case of the death of Phebe W. Bell or of Mary L. Smith before that of Susan Israel then the share of the said decedent to be paid to her child or children failing which to be paid to her sister if living or in case of her death to her descendant or descendants I give bequeath and devise to the above mentioned Company the sum of Ten thousand dollars in Trust to invest the same in the above mentioned securities for the use of my nieces Phebe W. Bell and Mary L. Smith and to pay to each of them one half of the interest on the investments as it accrues during life and on the death of either, one moiety of the principal to be paid to her child or children—failing which her interest in the Trust to pass to her sister or to her descendants in case of her death.

I give bequeath and devise to the above mentioned Company the sum of Twelve thousand dollars In Trust to invest the same in the above mentioned securities for the use, of my niece Rebecca Leaming, of Julia wife of my Nephew Robert W. Leaming and of my Nephew Francis W. Leaming paying to each of them during their respective lives one third of the interest on the said investment as it accrues and in the event of the death of either of them without issue his or her interest in the Trust to pass to the survivor or survivors, as the case may be and in case of the death of either of them leaving issue one third of the principal amount placed in trust with the said Company shall be paid to the said issue together with the principal of the interest which may have passed to him or her under the above mentioned provision, by the death of one or more of the parties interested in this trust.

I give bequeath and devise the sum of Two thousand dollars to the daughters of my nephew Robert W. Israel who may be living at the time of my death a like sum to Lewis

W. Smith the son of my niece Mary and a like sum to Lewis W. Ralston the son of my old friend Robert Ralston.

The residue of the Estate real personal or mixed which I may possess at the time of my death I give bequeath and devise to my brother William Waln.

The codicil merely affected the residuary clause. The balance in the hands of the executor for distribution (deducting the collateral inheritance tax) amounted to $16,000. The pecuniary legacies amounted to $38,000, and the question arose, under that clause of the will printed above in italics, whether the legacy in trust for Susan Israel was entitled to priority or whether it should abate equally with the others.

The Auditing Judge decided that the testator intended no preference among the legatees, and that all the legacies must abate.

Exceptions filed to his adjudication by the Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustees as aforesaid, were dismissed by the court, PENROSE, J., filing the following opinion:

If it were clear that the direction by the testator that "each bequest shall be fully carried out in the order in which it appears," &c., &c., related to the pecuniary legacies, we should probably have little difficulty in reaching the conclusion that a preference was intended; for while in general, a mere direction to pay in a particular order will not have this effect: Dunboyne *v.* Brander, 18 Beav., 313; Duncan *v.* Alt, 3 P. & W., 382; the reason is that it is not to be presumed that the testator contemplated the possibility of insufficiency of assets: Beeston *v.* Booth, 4 Madd., 161; Williams on Exec., 1472; and here the will, which provides for the sale of property specifically devised should the general estate be inadequate for the payment of certain incumbrances, necessarily payable before legacies could be reached at all, shows conclusively that such insufficiency was contemplated as a by no means impossible event.

But can it be said with certainty that the direction does so relate?

The testator, after providing that his debts, &c., shall be paid from the proceeds of his estate not specifically devised, devises and bequeaths: (1.) To his sister, his house on Walnut street with the furniture therein,—except specific articles bequeathed to certain nephews, &c.,—providing in express terms that if there should be any incumbrances on the property, "the same shall be discharged as soon as practicable," . . . . . so that his "sister may hold . . . . . free from all incumbrances," &c. (2.) To his brother, his country seat in the Twenty-third Ward, with the fifteen acres of ground ad-

joining, together with all the personal property therein, sub-
ject, however, as follows: "Provided nevertheless that the
property bequeathed shall be subject to sale in whole or in
part as the case may require, to enable the executors to carry
out fully the previous provisions of this will, it being my in-
tention that each bequest shall be fully carried out in the order
in which it appears in this my last will and testament, as the
funds derived from my estate may permit."

After directing the sale of the remainder of his real estate
in the Twenty-third Ward within two years after his death,
he gives pecuniary legacies as follows: $200 each to his two
colored servants, "in consideration of their faithful services,"
$10,000 in trust for his niece Susan for life, &c., $10,000 in
trust for his two nieces, Phebe and Mary, in equal shares, for
life, &c., $12,000 in trust for his two nieces, Rebecca and
Julia, and a nephew, Francis, for life, in equal shares, &c.,
$2,000 to the son of his niece Mary, $2,000 to the daughters
of his nephew Robert, and $2,000 to the son of an old friend.
The residue of his estate, real and personal, is given to his
brother, the devisee of the country seat.

It will be observed from this synopsis of the will, that, irre-
spective of the gifts of specific articles, there are two devises
and bequests preceding the provision relied on as creating a
preference among the general legatees, viz., the house and fur-
niture to the sister, and the country seat and personal property
therein and fifteen acres of land adjoining, to the brother, the
gift to the latter, however, being liable to being defeated if the
funds derived from the general estate should prove insufficient
fully to carry out the provisions for payment of incumbrances.
What then is the meaning of the clause (separated only by a
comma from the clause providing for payment of incumbran-
ces) "it being my intention that each bequest shall be fully
carried out in the order in which it appears in this my will as
the funds derived from my estate may permit." It will be
observed that the beneficiaries in the three sets of trusts bear
the same relationship to the testator. It will also be observed
that the word "bequeathed" is used in speaking of the prop-
erty given to the brother, and that the testator would natur-
ally, therefore, refer to the gifts to both his sister and brother
as "bequests." The provision for his sister is to be "fully
carried out," even if the gift to the brother, "in whole or in
part," should be required for the purpose; but if the funds
derived from the general estate will permit, "each bequest"
shall be "fully carried out in the order in which they appear
in the will," the "bequest" to the brother being defeated only
to the extent that an insufficiency of the funds derived from

the general estate may require sales of portions of it and thus prevent the gift from being "*fully* carried out."

It is possible that this was not the meaning of the testator. It is perhaps at least as likely that he did intend, notwithstanding the connection in which it is expressed, to create preferences among the general legatees of whom, as yet, he had not spoken. But to doubt this is to deny it. The presumption in favor of equality among legatees is founded on so strong an equity that it will prevail unless, upon a fair construction of the will, an intention to give priority is clearly manifest. "The onus lies on the party seeking priority to make out that such priority was intended by the testator, and the proof must be clear and conclusive." . . . . . "Where the expressions are ambiguous and do not mark with certainty the testator's intention, no priority can be allowed: " Williams on Executors, 1472; Towle *v.* Swasey, 106 Mass., 100; Appeal of University of Pennsylvania, 1 Out., 187.

We cannot say that the presumption of equality is overcome by unequivocal evidence of a contrary intent in this case, and the exception must therefore be overruled.

Whereupon the Pennsylvania Company for Insurances on Lives and Granting Annuities, trustees, took this appeal, assigning for error the decree of the court, holding that there was no preference to be given to the legacies given to the appellants in trust for Susan Israel and Phoebe W. Bell and Mary L. Smith, and awarding the balance for distribution *pro rata* among the various pecuniary legatees.

*John G. Johnson*, for appellant.—There are two questions involved here. (1) Does the disputed provision in the will direct a preference? and (2) Is this provision applicable to each bequest of the will or only to those which preceded it? As to the first the court below held that a preference was indicated and it is clear that the direction in the will was made in contemplation of a possible deficiency (*a*) from the antecedent devise of 914 Walnut St., to Phoebe L. Waln and the accompanying direction to pay the incumbrances on it out of the general estate. This could not be paid out of the real estate specifically devised until all else was exhausted and then as a *debt.* (*b*) From the specific devise following the above, of Waln Grove, to William Waln. Had the general estate proved insufficient, the direction in favor of Phoebe L. Waln as a *testamentary direction* could not have been enforced against Waln Grove without a special provision. Therefore the testator made this devise subject to a power of sale in his executors, because he feared the insufficiency of his general estate. (*c*) Immediately after providing for a possible deficit by thus clearly directing

as between Phœbe and William a preference as well as a priority he expressed his will concerning all his bequests. The provision for one brought within his contemplation all his legatees, and he directed that each bequest should "be fully carried out in the order in which it appears in this my last will." A direction to "carry out" may be only equivalent to "pay," but a direction fully to carry out in a certain order implies more. (d) The decisions which give no preference because of a mere provision for priority in the order of payment rest upon the absence of anything to show that the testator contemplated a deficit: Murdoch's Appeal, 7 Casey, 51; Beeston v. Booth, 4 Maddock, 161; 2 Williams on Executors, 1471.

(2) The provision is applicable to each bequest in the will; because the testator evidently intended a preference. The only question is what legatees are to be preferred; and the objection arising from the general presumption of intended equality cannot arise. (a) The direction is that *each bequest* is to be fully carried out in the order in which it appears, not that each *previous* bequest shall be so carried out. It was unnecessary to make such direction as to the bequest to Phœbe because the power of sale of the property to William covered her case and effectually provided against any deficiency so far as she was concerned. But the contemplation of the contingency induced him to insert there his general intention as to all his bequests. (b) The bequest covered by the direction was those payable out "of the funds derived from the estate." But the previous devise and bequest were not to be thus carried out; but by a sale of a part of it only, viz., Waln Grove, and the testator directs a sale of the farm to meet the general legacies. (c) Moreover if the provision refers simply to the previous bequest it becomes absurd, because inapplicable to William's share. If Waln Grove should be called on for contribution to Phœbe, the devise would not be fully carried out. If it should not be called upon, there would be no necessity for saying anything about it.

*George Tucker Bispham* (with whom was *Edward Shippen*), for the appellees.—If assets are insufficient to answer general legacies the legacies abate *pro rata*: Act 24th February, 1834, § 48, Purd. Dig., 448. And the onus lies on the party claiming priority: 2 Williams' Executors, 1472; Miller v. Huddlestone, 3 Mac. & G., 513; Bright's Appeal, 4 Out., 602. The clause in question refers to the previous provisions of the will. There is no motive for its application to the subsequent bequests and there is a motive for his preferring Miss Waln. The testator was careful not to say "each bequest *in my will*;" and recites his intention parenthetically "it being my intention" which

should naturally be connected in the preceding clause. At all events the testator has left the matter in doubt, whereas the intent to give a priority should be clearly manifest in order to avail: Williams on Executors, 1472; Towle *v.* Swasey, 106 Mass., 100; University of Penna's Appeal, 1 Out., 187. The language of the clause is not sufficient to alter the general rule: Lord Dunboyne *v.* Brander, 18 Beav., 313; Blower *v.* Morret, 2 Ves. Sr., 420; Swasey *v.* Bible Society, 57 Me., 523; Towle *v.* Swasey, 106 Mass., 104; Lewin *v.* Lewin, 2 Ves. Sr., 14; Thwaites *v.* Foreman, 10 Jurist, 483; Ashburnham *v.* Ashburnham, 16 Simons, 186; Duncan *v.* Alt, 3 P. & W., 382; Gray's Estate, 37 Leg. Int., 283.

Mr. Justice CLARK delivered the opinion of the court April 27th, 1885.

The testator, Lewis Waln, domiciled in the city of Philadelphia, died in the month of December, 1863, leaving neither wife nor child, father nor mother. By his last will and testament he provided, in substance as follows:—

1. That his debts should be paid from the proceeds of his estate, not specifically devised.

2. To his sister, Phoebe L. Waln, he devised his house and lot, No. 914 Walnut street, with the furniture, &c., except his books and paintings, otherwise specifically disposed of; directing, that all incumbrances thereon should, as soon as practicable, be discharged, "so that," as the testator himself says, "my sister may hold the said estate in fee simple, free from all incumbrances, and free from any claim for interest, or taxes."

3. To his brother William Waln, he gave Waln Grove, his country seat, with the adjoining grounds, comprising about fifteen acres, in the twenty-third ward, with the personal property therein, &c.; "provided nevertheless, that the property bequeathed shall be subject to sale in whole or in part, as the case may require, to enable the executors to carry out fully the previous provisions of this will, it being my intention that each bequest shall be fully carried out, in the order in which it appears in this my last will and testament, as the funds derived from my estate may permit."

4. After directing the sale of the remainder of his real estate in the Twenty-third ward, within two years after his death, he gives pecuniary legacies as follows:—$200 to each of his two colored servants, "in consideration of their faithful services;" $10,000 in trust for his niece Susan Israel, for life, &c.; $10,000 in trust for his two nieces, Phoebe and Mary, in equal shares, for life, &c.; $12,000 in trust for his two nieces, Rebecca and Julia, and a nephew, Francis, for life, in equal

shares, &c.; $2000 to the son of his niece Mary; $2000 to the son of an old friend. The residue of his estate, real and personal, is given to his brother, the devisee of the country seat.

The specific provisions in favor of his sister Phoebe L. Waln and his brother William Waln, are unimpaired, and these, with the bequest of his books and paintings, have been " fully carried out"; but to pay the general legacies, amounting in the aggregate to $38.400, there remains in the hands of the executor only $16,000. In view of this deficiency of assets the Pennsylvania Company &c., trustee for Susan Israel, contends, that this fund should be applied to each of the several pecuniary legacies, "in the order in which it appears," in the will, and claims priority in right, over the legacies which are written in the will, after the legacy of Susan Israel.  *

In the distribution of a testator's estate, the well known general rule of the common law is, that, in case the assets, after payment of debts, are insufficient to answer the specific but not the general legacies, the latter are subject to a proportional abatement ; but if by the will the intent of the testator, clearly manifested, is to give one or more general, legatees a priority to others, that intention will be carried into effect: Williams on Executors, 1467–71.  The 48th section of our statute, of 24th February, 1834, Purd. Dig., 448 pl. 212, is, therefore, declaratory merely of the rule previously recognized. No such preference, however, can be presumed; it must clearly appear, either by the express words, or from fair construction of the will. It is founded in an apprehension of an actual deficiency of assets, not of any anticipated delay, in bringing them to distributable form; therefore, a distinction must, in each case, be made between what may be intended as a priority in payment merely, and what may import a priority in right.  We think however, to whichever portion of the will they may be found to refer, there can be no doubt, that the words of the proviso are sufficient to indicate, that a preference in right was intended. We cannot mistake the meaning of the testator, when he says, that it is his intention "that each bequest shall be fully carried out, in the order in which it appears," in the will, as the funds of his estate may permit. It is quite clear, we think, that this was written, when the testator had in his mind the possibility of a deficiency of assets, and that his purpose was not merely to provide an order of payment.

But the question which remains to be decided is, to what this preference applies. Was it intended to apply in the immediate connection in which it is expressed, only, or was it also intended to affect the relative rights of the general lega-

tees, of whom as yet the testator had not spoken? The
opinion of the learned court below is so full and clear upon
the point indicated, that any further discussion or elaboration
of it must necessarily involve a useless repetition. We will,
therefore, refer but briefly to the considerations which, in our
view, show the conclusions of the learned court to be correct.
It is certainly clear that the first clause relates exclusively to
the. antecedent portions of the will; that is its plain and
precise expression—"the property bequeathed shall be sub-
ject to sale, in whole or in part, as the case may require, to
enable the executors to carry out fully the previous provisions
of the will." But it is contended, that the second clause is
more general in expression, and was intended to apply to the
provisions of the will throughout. It will be observed that the
two clauses constitute but a single sentence; their grammati-
cal construction seems to show that they were so intended.
No mere punctuation could give to the second clause the form
of an independent sentence; it is parenthetic, and is connec-
ted in sense with what immediately precedes it. The first
clause, it is admitted, gave a preference to Phoebe L. Waln,
over her brother, William Waln, and the second, undoubtedly,
gave them both a preference over all others; each clause,
therefore, evidences a distinct purpose of the testator's mind,
and their force would in no degree be impaired, if the general
legacies had, in fact, not been created. A bequest, it is true,
is properly of personal estate, but the testator having spoken
of the gift to his brother as the "property bequeathed" to
him, we may believe, if the contexts favors it, that "each
bequest" refers to the gifts previously made although consis-
ting, in part, of realty; and especially so, as these were at the
moment, the subject of his particular consideration. The
testator does not say that "all the bequests" are to be fully
carried out in their order; his language is, "each bequest"
and as, in the same sentence, he had particular reference to
the two previous provisions it is fair to infer that these were
intended. This view of the case is greatly strengthened by
the fact, that no motive is discovered for the preference of
one of the legatees over the others; all stood in equal degree
of kinship to the testator, and no fact or circumstance appears
to explain his purpose, in the preference, alleged. We may
however, readily assign the motive which would move the
mind of a brother to exercise such a preference for the pro-
tection of a single sister. Whilst a preference in right is in
all cases founded on an apprehension of a deficiency of
assets, it is not established thereby, it must be expressed in
the will. Equality is the highest equity, and, in a distribu-
tion to legatees, will be enforced unless, as directed by the

Act of 1834, "it shall be otherwise provided by the will." The burden is upon the appellants; if the will gives them a preference over others, they must point out the place where it may be found. The presumption is against it, and that presumption cannot be repelled by any ambiguous expression; the intent to the contrary must be clear. Nor will the testator's design, in any event to uphold the specific gift to his sister, dispense with the measure and quality of proof required, or show an intent to extend that preference to the general legatees in their order; unless the priority alleged clearly appear, they will be let in on equal terms: University's Appeal, 1 Out., 187.

We agree with the learned court below, that the reasonable construction of this will shows the testator's purpose, that the provision for his sister should first be "fully carried out," even if the gift to his brother, "in full or in part," be required for the purpose; but if the funds of the estate permit, that each of said "bequests" should be "fully carried out, in the order in which they appear in the will, and that this was the only preference which the testator intended.

It follows, that the $16,000, in the hands of the executor, must be distributed, pro rata, to the general legacies.

> The decree of the Orphans' Court is therefore affirmed, and the appeal dismissed at the cost of the appellant.

## Appeals of The Pennsylvania Company for Insurance on Lives and Granting Annuities, Executors, &c.

## Allen's Estates.

1. Where a testator has given absolute interests to several as tenants in common with a gift over upon the death of all without leaving issue surviving them or the testator, cross remainders will not be implied between the legatees.

2. A testatrix gave two thirds of her residuary estate to her daughter, the remaining third to her husband for life; after the decease of her husband she gave the remainder of the one third to her two step-children and then provided: "In case of the decease of both of the said step-children without leaving issue surviving them or me, I give, devise and bequeath the said remainder to my daughter and to each and every other child which may hereafter be born of me and to their issue, and in case of the decease of my said daughter and all of said children without leaving issue, &c.," then over.