## Petty's Estate (No. 1).

Argued March 28, 1933.  Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John G. Frazer,* with him *H. Parker Sharp* and *Reed, Smith, Shaw & McClay,* for appellant.—The trust agreement clearly shows that the donor intended to create one trust for the benefit of his mother and his widow and not separate trusts for the benefit of each of them, respectively: Parkhurst v. Ginn, 228 Mass. 159.

The rights of donor's mother are not superior to the rights of his widow under the insurance trust agreement because the agreement does not show that donor intended to prefer his mother to his widow in case of a deficiency of assets: Elmore's Est., 292 Pa. 571; Waln's Est., 109 Pa. 479.

The provision in the insurance trust agreement for donor's widow is for her maintenance and support, for which donor made no other adequate provision, and the

law, therefore, presumes that donor intended his widow's rights to be superior: Lewin v. Lewin, 2 Ves. Sr. 415; Reed v. Reed, 9 Watts 263; Murdoch's App., 31 Pa. 47; Clery's App., 35 Pa. 54.

The donor's actual intent, as shown by the insurance trust agreement and by his will, was that his widow's rights should be superior: Elmore's Est., 292 Pa. 571; Murdoch's App., 31 Pa. 47.

*Anne X. Alpern,* with her *Kenneth R. Cunningham,* for appellee.—The language of the trust shows a clear intention by the settlor to prefer his mother to his widow in distribution.

In event of deficiency in assets, where no priority in payment is expressed, the loss falls first upon the residuary distributee: Reimer's Est., 159 Pa. 212; Taylor's Est., 239 Pa. 153; Barrett's Est., 22 Pa. Superior Ct. 74.

No presumption of an intention to prefer the widow over the mother arises by reason of her close relationship to the settlor or her dependency upon him for support: Lewin v. Lewin, 2 Ves. Sr. 415; Blower v. Morret, 2 Ves. Sr. 420; Barry's Est., 13 Phila. 310.

OPINION BY MR. JUSTICE KEPHART, April 17, 1933:

David F. Petty entered into an insurance trust agreement with the Union Trust Company of Pittsburgh, wherein it was agreed the net proceeds of policies of insurance on his life should be collected at his death and held by the trust company, as trustee, under the terms thereof. Petty died November 30, 1930, and pursuant to the agreement the trustee collected $257,500. Petty by his will directed that the residue of his estate should be added to this fund and held upon the same trust. He believed his estate to be of greater value than it proved to be. There were not sufficient funds to pay the legacies given in the will with the result that no residue remained.

The trustee of the insurance trust filed in the Orphans' Court of Allegheny County an account which set forth that, after paying certain sums to relatives and employees as therein provided, satisfying a mortgage and setting up a fund of $100,000 for his daughter, there was a deficiency of assets in the residue of the trust fund to meet the remaining charges fixed by the settlor thereon. The beneficiaries of this residue were settlor's mother and wife. A contest arose as to which of the two was entitled to preference in distribution. The court below held settlor's mother was and this appeal by his wife followed.

The first question to be answered is whether, by the trust instrument, the settlor intended to create one trust fund of the residue of the trust estate, or whether a separate 'trust fund for the benefit of each of them was established. The court below held that a separate trust was created of such an amount as would produce a net income of $200 per month for the mother. As the entire residue was necessary to do this, no fund remained for the widow.

Article V of the trust agreement is the only one that needs to be considered, and in this the seventh and eighth paragraphs control. They are as follows: "The Trustee shall pay from the net income of this trust then remaining, the sum of Two Hundred [$200] Dollars per month to Minessota Petty, mother of the insured, for and during the full term of her natural life. The Trustee is authorized to use so much of the corpus hereof as it may deem necessary for the benefit of the mother of the Insured."

"The Trustee shall pay the balance of the income hereof to Lola M. Petty, wife of the Insured in monthly installments, for her own use for and during the full term of her natural life or so long as she shall remain the widow of the Insured. Should such remaining income be insufficient to provide payments of Five Hundred [$500] Dollars per month to the said wife of the Insured,

the Trustee is authorized to use so much of the corpus hereof as may be necessary to make the said payments. In the event of the remarriage of Lola M. Petty, wife of the Insured, she shall thereafter be paid no more than the sum of Twenty-five Hundred [$2500] Dollars per year for the remainder of her natural life from this trust."

It will be noticed that the first sentence of the seventh paragraph begins with "The Trustee shall pay from the net income of this trust then remaining." The phrase "then remaining" presupposes something has been carved from the original corpus of the trust estate, as the preceding paragraphs show, and considers what is left the residue. There is no direction in this paragraph to set up from this fund remaining an amount sufficient to yield $200 per month. There is no disposition of the income that would accrue from such a fund should the mother predecease the widow.

In the second sentence of the paragraph, the words "the corpus hereof" refer to the "trust then remaining," mentioned in the first sentence of the paragraph. In the next, the eighth paragraph, the words, "The Trustee shall pay the balance of the income hereof to Lola M. Petty," speak of the same income indicated in the preceding paragraph,—that is, the income from the trust "then remaining." The same "corpus" is to produce all the income. Still further the instrument reads: "Should such remaining income be insufficient" to provide $500, —still the same income,—then "the Trustee is authorized to use so much of the corpus hereof as may be necessary to make the said payments." The "corpus hereof" is the same "corpus hereof" referred to in the preceding paragraph from which all the income is to be derived.

If separate trusts had been intended, the direction would have been to pay income from the *balance* of the corpus hereof. Throughout the rest of the agreement, in the disposition of the income from this residue for the

support, maintenance and education during minority, of Helen, his daughter, with directions that the income from the corpus be paid directly to her for life after she became of age, and with remainders over of the corpus, Mr. Petty, the settlor, was disposing of the same corpus and its income. The general plan of article V does not manifest a design to divide the residue of the fund into two distinct funds, the income from each of which is to be for the benefit of each beneficiary named. The gift of the entire residue to the trustee is most comprehensive. It is the persons named, the widow and mother, who are to receive the income from it as directed by the trust agreement. We conclude it is a single fund.

Appellant urges that the payments to the widow are for her maintenance and support and as no other adequate provision is made therefor, the widow's rights are superior to those of the mother; and particularly is this so since the court below finds that this order, depriving the widow of any payment, works a great hardship on her.

Appellant relies on Lewin v. Lewin, 2 Ves. Sr. 415, 28 Eng. Reports 265, decided in 1752, although, as pointed out by the learned counsel for appellee, this doctrine was repudiated in Blower v. Morret (see page 420 of that volume), which was written four days after Lewin v. Lewin, by the same Chancellor. In Blower v. Morret, Lord HARDWICKE refused to prefer the widow to other legatees. It was followed by Miller v. Huddlestone, 3 McN. & G. 513, 42 Eng. Rep. 358, where the court refused to prefer annuities to the testator's daughter and brother over legacies to collaterals. He held that close family relationship of annuitants and their dependency on testator did not entitle them to priority. Chancellor TRURO therein said: "I think it may be safely affirmed that, in the absence of all indications to the contrary, it is generally to be assumed that the testator considered that his estate may be sufficient to answer all purposes to which he has devoted it and consequently makes no

provision against a deficiency; such being the general rule, the Court would not be right in saying, without clear and conclusive reasons, that he intended to provide against an event, which in general it is not to be supposed that he ever contemplated. ...... If we must speculate on the presumable intention of the testator, I do not consider it by any means clear that the testator must be presumed to have intended a preference of his child, which might operate to the exclusion of others, for whom he has manifested an intention to make some provision. If the testator has thought fit to provide for other persons besides his children and his wife, if he has not made them the exclusive objects of his bounty in the case of the property being sufficient, he might never have intended them to be the exclusive objects of that bounty even in the event of a deficiency."

The New York Courts apparently have followed Lewin v. Lewin, supra, but, wherever the question has come up in other American jurisdictions, Blower v. Morret, supra, has been followed. Moreover, in Lewin v. Lewin, the court said in holding that a preference should be made, where "no provision by settlement or otherwise [had been made] under which his wife or children could claim, it was natural for him in making a disposition of his estate so to give it that their provision should be in the first place." Reasonable provision has been made for the widow in the case before us. In addition to the valuable unincumbered dwelling house, she will receive a substantial legacy of $25,000; she may receive a sum for her minor daughter's maintenance out of the $100,000 fund established for the daughter.

In construing the relative rights of the widow and mother under the trust instrument we can not view them in the light of those possessed at common law or by statute when a will is involved. It may be that in a will a widow should be considered a preferred legatee because her legacy is in lieu of dower, where there is some basis for doing so; but a consideration of dower or other

rights must be restricted to cases of wills. Such rights do not exist under inter vivos trust agreements as to personal estate. This is definitely settled by Beirne v. Continental-Equitable Title & Trust Co., 307 Pa. 570. There this court stated: "......so far as concerns his personal estate, a husband may do what he pleases with it, and the wife cannot be heard to complain. ...... 'A man can never be said to commit a fraud on the contingent rights of others, where it depends on his own act whether they shall ever exist'......and [in a deed of trust] this is not shown merely by proving that 'the husband's intent [was] to deprive the wife of her distributive share in his estate as widow.' " A widow or mother, with regard to trust agreements of personalty like the present, stands in the same position as any other beneficiary that chances to be named in the trust. While it is provided in the Fiduciaries Act of 1917, P. L. 447, section 20, that if the residue, after deductions for debts and administration expenses, is insufficient to pay all the pecuniary legacies, an abatement shall be made in proportion to the legacies so given, unless the terms of the will provide otherwise, there is no settled rule on the question of a widow's priority, if entitled to any, in a will case. It is not necessary to lay down any such rule herein. What we here decide is that the settlor did not intend by the language of the trust instrument to create a preference in favor of his wife.

Appellee contends that the rights of the mother are superior to those of the widow. It is urged by appellee that under article V he indicated clearly an intent to prefer his mother to his widow in distribution, and that the language reflects the concern of the son for the well being of his mother; that he not only provides her with a minimum income of $200 per month, but if that is insufficient, he gives the trustee authority to use so much of the corpus as may be necessary for her benefit. No such concern is manifested for the widow, says appellee, as she was given only the "balance of the income." Where

a settlor in a trust agreement clearly indicates that he intends to prefer his mother over his widow or any other preference in case of a deficiency in assets, this intention will be enforced. See Elmore's Est., 292 Pa. 571; Murdoch's Est., 31 Pa. 47. The burden is on those who claim a preference in the distribution of a trust or any estate; they must sustain their claim by a clear demonstration from the instrument that confers the benefit. The presumption is against a preference and it is not overcome by ambiguous or uncertain expressions. It has been held in will cases the intent must be clearly established: Waln's Est., 109 Pa. 479, 486. In that case, the court held, in the will under consideration, the presumption against a preference had not been overcome and ordered a pro rata distribution.

There is nothing in the language of the insurance trust agreement that indicates Mr. Petty intended to prefer his mother to his widow in case of a deficiency in assets; consequently, the presumption against the preference is not overcome. The mother is not entitled, therefore, to insist that no payments from the corpus of the trust shall be made to the widow on the ground that the effect of these payments would be eventually to reduce the income available for distribution to her. An intent to prefer the mother can not be inferred from the fact that she is named before the widow in the agreement, or from the fact that it is provided that payments from the corpus of the trust should be made to her. The order in which the various legacies appear in the agreement, without more, each being preceded, respectively, by the numerals "first," "second," "third," etc., does not evidence a design on the part of the testator that such settlements should be satisfied in full according to their order, nor that they are entitled to priority according to their position. We do not find any decision in this State or elsewhere that sustains such a claim.

We have frequently stated that equality in the distribution of decedents' estates prevails where it is pos-

sible to have it: Section 20 of the Act of June 7, 1917, P. L. 447, supra. The same is true of inter vivos trust estates. Where a trust estate is not sufficient to pay in full all the beneficiaries named, in the absence of an express intention that the settlor intended otherwise, settlements or benefits abate pro rata.

If this were a gift of income alone, the question would be free from doubt: the words, "balance of income" would put us on safe ground; but this is a combined gift of income and of corpus,—without preference,—that is, if the trustee believes it necessary for the support of the mother, in addition to the income of $200 per month, he can take from the corpus. If the remaining income is not sufficient to make $500 per month for the widow, that sum must be made up from corpus. The settlor must have known when he directed corpus to be used in making up the wife's deficiency in income, it would of necessity deplete the corpus that was available to produce her income. The effect of this would be to work an exhaustion of corpus to the detriment of his mother. This is not what the settlor intended. Rather it is clear he intended his mother to be paid $200 a month from income during her life, and it is also clear he intended his wife to receive for life $500 a month from income, if possible, and, if not, from income and corpus. It is impossible to meet settlor's anticipation. Under these circumstances, there must be an abatement proportionately. The widow is not to be deprived entirely of her income, nor is the mother to be shorn of all her income before her death by reason of the widow's taking out $6,000 a year from a corpus of $52,000. The mother should receive an annuity, abated in amount, which will permit the widow to receive an annuity, also abated in amount, from income and corpus during the same period, to the end that, viewing the normal expectancy of the mother's life (she being the older of the two), the mother and the wife will receive equal treatment. They are both equally entitled to consideration by the court and neither should be de-

372

prived of it. For illustration, if the widow and mother should each receive three-fourths of the amount settlor named, the mother from income and the widow from income and corpus, assuming a yield of 5%, the ratio could be sustained for three or four years without change. A gradual depletion of the corpus would be in force and at the end of that time a new adjustment would be necessary. As the trust estate is before an able tribunal, if the parties cannot agree, the court below, taking into consideration all the circumstances, will make a satisfactory order. Difficult cases should not stand in the way of equal justice where it is possible to administer it.

Case remanded for a decree in accordance with this opinion; no costs to be taxed for either side.