## McCutcheon's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the following extracts from the adjudication of

GEST, J., Auditing Judge.—Clarissa C. McCutcheon died on October 27, 1931, unmarried and without issue, and leaving a will duly probated on November 4, 1931, when letters testamentary were granted. . . .

By the third paragraph she bequeathed the following legacies to individuals, viz.: To Augusta Burbank Couch $5,000; to Adelaide Norton Karrow $5,000; to William M. Humphrey $3,000; to Ella H. Smith $3,000; to Eva Nelson Gilbert $2,000; to Mary Graham $1,000; to Carl Everett Lorenz $2,000; to Frances Thomas Lorenz $1,000; to Virginia K. Powell $5,000; to Lucy McCutcheon Yaw $3,000; to Lide Sherburne $1,000; and to Clarissa Weldon $5,000; and the testatrix further provided: "I hereby appoint her mother Elizabeth McCracken Weldon testamentary guardian of said fund for Clarissa Weldon to hold, invest, re-invest and keep invested, the monies, in good securities, not legal securities merely, my purpose being to obtain a better income return on investments than legal securities might yield, and to use the income therefrom for the maintenance, education and support of her said daughter, Clarissa, until said daughter reaches the age of twenty-one years when said fund shall be paid to Clarissa Weldon." . . .

By the ninth paragraph of her will she provided: "I direct that all bequests made by me in the third paragraph of this my will be paid to the individual legatees named in full. All taxes incident to said bequests, whether State or Federal, and of whatsoever nature, I direct to be paid out of my residuary estate before the principal sum forming the residuary is distributed." . . .

A question of construction was argued by counsel and submitted to the court. Under the third and ninth paragraphs of the will above quoted, it was claimed, in behalf of the individual legatees named in paragraph 3, that the ninth paragraph operated as a direction that these legatees be paid in full in preference to the legacies bequeathed in the fourth, fifth, sixth, and seventh paragraphs to corporations for charitable purposes. It was stated, and may be admitted, that three of the legatees are cousins of the testatrix and one of them is a granddaughter of a cousin of the testatrix; but, in my opinion, this fact does not affect the construction of the will.

I have considered the question with care and have no doubt that the intention of the testatrix, in the ninth paragraph, was simply to relieve her individual legatees from payment of inheritance taxes on their legacies and was not intended to direct their payment in full as preferred over the legacies to the corporate legatees.

The Fiduciaries Act, sec. 20, following the older Acts of February 24, 1834, P. L. 73, and March 21, 1772, 1 Sm. L. 383, provides for the pro rata abatement

of pecuniary legacies where the residue after the payment of debts and expenses, is not sufficient, and this is declaratory of the settled law which is given the stamp of legislative approval. Waln's Estate, 109 Pa. 479, is applicable. In that case, it was said that the presumption is against a preference among pecuniary legatees, and that presumption cannot be repelled by an ambiguous expression; the intent to the contrary must be clear. And in University of Pennsylvania's Appeal, 97 Pa. 187, 200, it was said: "As between legacies which are in their nature mere bounties, the presumption of intended equality exists and governs, unless overcome by unequivocal evidence to the contrary. No priority will be allowed where the expressions of the will are ambiguous."

In Miller v. Huddlestone, 3 Mac. & G. 513, it was said by Lord Chancellor Truro that "the *onus* lies on the party seeking priority, to make out that such priority was intended by the testator, and that the proof of this must be clear and conclusive. The reason is, that a testator, in the absence of clear and conclusive proof to the contrary, must be deemed to have considered that his estate would be sufficient, and consequently not to have thought it necessary to provide against a deficiency by giving a priority, in case of a deficiency, to some of the objects of his bounty." And this case was quoted with approval by this court in Barry's Estate, 13 Phila. 310.

Now in this case the specific bequests of personal effects aggregate $8,371.80; the pecuniary legacies to individuals amount to $36,000, and the legacies to the charitable corporations are $19,000, a total of $63,371.80. The account shows a balance for distribution of $63,026.42 (and if the balance of income due the administration, $2,810.40, be added, as it should be, the total is $65,836.82). The parties in interest ask, at the present time, for a distribution of the cash on hand only, with leave to the executors to retain the securities, "in the hope that an increase in values would result in payment of the pecuniary legacies in full as well as leave something over as residuary estate." How then can it possibly be argued that the testatrix did in fact contemplate that there would be deficiency in her estate? On the contrary, the testatrix evidently supposed that she would not only leave an estate sufficient to pay all the legacies, but that a residue would be left for her residuary legatees, for she in her will twice refers to her residuary estate as chargeable with taxes, and expressly disposes of the residue.

But it was strenuously argued by the learned counsel for the individual legatees that the testatrix intended to give them a priority by directing the payment of their legacies "in full". As I stated in the beginning of this discussion, I do not think that was her intention. This direction is immediately followed by a clause in the same ninth paragraph of the will that directs the inheritance taxes to be paid out of the residuary estate, and this I regard as explanatory of the meaning of the words "in full". The entire ninth paragraph must be read together as a whole. Surely, if the words "in full" had been separated from the words that follow by a comma instead of a period, no one could, it seems to me, have the slightest doubt that the testatrix meant by the words "in full" exactly what I have said, and if the argument turns, as I think it must, upon the use of a period instead of a comma, the answer is that the presumption of equality and pro rata distribution is not overcome by mere punctuation, which, as was said in Ewing v. Burnet, 11 Peters 41, is a most fallible standard by which to interpret a writing. By reading the whole paragraph together, the words "in full" are given all the weight to which they are entitled, meaning without deduction, which has nothing to do with a preference over the other legacies, which are nowhere referred to. I therefore rule that the pecuniary legacies must all abate pro rata.

Now, at the present time at least, there is no residuary estate from which the taxes on the legacies contained in paragraph 3 can be paid, and, consequently, each legacy must bear its own tax: Greaves's Estate, 29 Dist. R. 577, last paragraph of the syllabus.

The specific legacies bequeathed of jewelry and personal effects were paid without deduction of tax, which paragraph 2 of the will directs shall be paid from the residuary estate. There is no residuary estate, and consequently it appears to me that the direction is tantamount to a pecuniary bequest of the taxes, which is subject to abatement. I examined this question with some care in Greaves's Estate, 29 Dist. R. 577, and cited some authorities, to which may be added Re Turnbull, [1905] 1 Ch. 726. If objection be made by any of the parties, the adjustment may be made in the schedule of distribution or the matter be brought before the court in the subsequent account. The same principle applies to the pecuniary legacies given to the individual legatees in paragraph 3, where the tax is also directed to be paid from the non-existent residuary estate. This is tantamount to a bequest to the individual legatees of the taxes thereon.

The Income Account shows a balance of $2,810.40, which, for purposes of the present distribution, should be added to the principal balance for the benefit of the pecuniary legatees: Greaves's Estate, 29 Dist. R. 577; Bennett's Estate, 29 Dist. R. 148.

*Thomas N. Griggs*, for exceptant; *Richard Hay Woolsey*, contra.

SINKLER, J., June 30, 1933.—The seven exceptions to the adjudication filed in behalf of certain of the pecuniary legatees named in paragraph 3 of the will all relate to the construction of the ninth paragraph thereof. To the discussion of the legal principles involved as set forth in the adjudication we can add nothing, and with the conclusion of the auditing judge we agree. The effect of the second sentence of paragraph 9 is to explain or amplify the first sentence. The wording used by the testatrix is no more than a paraphrase of the usual phraseology, that is, a direction that the legacies in question be paid without deduction of the transfer inheritance tax or other tax of like nature, which the executors are instructed to pay out of the residuary estate.

The exceptions are dismissed and the adjudication is confirmed absolutely.

Van Dusen, J., did not take part in the decision.

STEARNE, J., dissenting.—To decree that pecuniary legacies payable to the legatees named in item 3 of the will abate pro rata upon insufficiency of assets violates the unambiguous direction of testatrix in item 9 that such legacies are to be paid *in full*.

Rules of construction and presumptions as to testamentary intent must always give way to an expressed intent. The sole purpose of rules of construction is to ascertain and effectuate the intent of testator, not as it may have existed in his mind, not as he may have intended to express it, but as it is actually expressed in the language of the will. In expounding a will, it is not what the testator meant but what is the meaning of his words: Ludwick's Estate, 269 Pa. 365, 371.

The rules of construction—statutory and judicial—are correctly and accurately recited by the auditing judge. They are to the effect that, in the absence of testamentary direction, pecuniary legacies abate pro rata upon an insufficiency of assets; that there is a presumption against preference which cannot be repelled by an ambiguous expression and the intent to the contrary must be clear. I have no quarrel with such rules, but maintain that they can only be applied in aid of testamentary intention where the direction of the testator is

ambiguous. Here testator's direction is clear and unambiguous, and therefore the above rules need not and ought not to be applied.

The direction of item 9 is clear and unequivocal. It reads as follows: "I direct that all bequests made by me in the third paragraph of this my will be paid to the individual legatees named in full." The next, and only other sentence in the item, is: "All taxes incident to said bequests, whether State or Federal, and of whatever nature, I direct to be paid out of my residuary estate before the principal sum forming the residuary is distributed." Thus in the first sentence testatrix directs payment in full to individual legatees. In the second sentence testatrix gives those legatees a bequest to the amount of the inheritance taxes.

The auditing judge and the majority are of opinion that these two clauses read together are an ambiguous expression of intent. They decide what the testatrix really intended to do was to pass the legacies free of tax and nothing more. With this legal conclusion I disagree.

The reasoning depended upon to raise the ambiguity is highly artificial and strained. Apparently, punctuation is partially relied upon. The auditing judge says that if a comma had been used after the words "in full" (but which was not in fact so used) his interpretation would have been unquestionably correct. I agree that mere punctuation is a most fallible standard by which to interpret a writing.

As I understand the ruling of the auditing judge, his conclusion is largely predicated upon the theory that testatrix manifestly supposed that her estate would be sufficiently ample to pay all her legacies. This because she refers twice to her residuary estate as chargeable with taxes and because she disposes of a residuary estate. From these facts the auditing judge concludes that item 9 necessarily must refer exclusively to exempting the legacies from tax and nothing else. This conclusion, in my opinion, is fallacious. True, she may have hoped, or even expected, her estate to be ample for all purposes, but I see nothing incongruous in a testamentary provision—in plain language—that certain legatees shall be paid in full. Why should we exclude the possibility that perhaps the testatrix did have a thought of a possible deficiency. The will was executed on April 11, 1930, six months after certain very definite recessions in values of securities following October 1929, an indelible period in most memories. Testatrix died on October 27, 1931, while financial conditions still remained in upheaval. How, therefore, can he say, when testatrix plainly stipulated that her individual legatees be paid *in full*, that all she meant was a tax exemption?

But the chief theory of ambiguity found by the auditing judge is that both sentences should be read as one, or together. Eliminating the question of punctuation, what these two sentences are held to do is to "pay the legacies in full, after the tax is paid from the residuary estate". Or, "pay the legacies free of tax". Now if this is all the testatrix intended to do it seems very curious to me that she would not have repeated what she had already done in item 2, where she exempted the specific legacies from inheritance tax. Furthermore, if the conclusion of the auditing judge is adopted, the first sentence respecting payment in full becomes pure surplusage. To exempt the legacies from tax all she needed to have done was to employ the second sentence, as she had previously done in the second item. Certainly we can attribute no testamentary intent to employ superfluous or meaningless words. All words must be given their ordinary and proper meaning if at all possible: Irwin's Estate, 14 D. & C. 673, affirmed in 304 Pa. 200.

What this decision really does is to create, judicially, an ambiguity in the face of a plain testamentary direction. It discovers an implied intent not to do what testatrix directed, because she set up a residuary clause, provided for pay-

ment of taxes thereout and disposed of the residuary estate; the conclusion is aided by reference to nonexistent punctuation and by reading together two sentences as applying to one subject matter—although in fact referring to two—and thereby has made one sentence superfluous, if not meaningless. After thus artificially (as I believe) establishing an ambiguity, the remaining steps are quite logical, and would be proper if the foundation is sound. The auditing judge then superimposes upon this foundation, so laid upon implied intention, perfectly sound canons of construction and presumptions and reaches a result to equalize *all* legacies. All of this is in the face of plain and unambiguous directions that her individual legatees be paid *in full*.

If it becomes necessary to apply rules of construction—which it should not be where there is express direction—why not apply by analogy at least that rule which favors the blood of a testator rather than a stranger? 1 Page on Wills, section 817. The record is not clear as to the relationship of all the individual legatees. But the auditing judge says 3 are cousins and 1 is a granddaughter of a cousin. True it is that this relationship is remote, but nevertheless, it is manifest that these 12 individual legatees were the nearest and dearest to her. The 12 legacies total $36,000. Seven of the 12 are given very substantial specific bequests, and two of them take between them about seven eighths in release of the specific legacies totaling over $8,000. These same two take between them one half of the residuary estate. In directing that these 12 individuals be paid their legacies in full, certainly testatrix—an unmarried woman without issue—clearly intended to prefer her "nearest and dearest" over four pecuniary legatees, charitable corporations: a church, the Salvation Army, a home and a society for prevention of cruelty to animals.

For the foregoing reasons, I would prefer to attribute testatrix's direction to pay her individual legatees mentioned in item 3 *in full* its normal, usual and natural meaning, and without resorting to rules of construction and implied intention. When testatrix directed payment *in full* I would do precisely that.