# Estate of Daniel Mickley, deceased. Appeal of Daniel N. Stephey.

*Will—Construction—Scheme—Distribution—Intent—Equality.*

Where the scheme of a will is equality among the children, the substitution of grandchildren, eo nomine as legatees in place of their deceased mother, makes no change in the method of determining such distribution, and the children take their mother's share subject to advances made to her.

*Will—Rules of construction—Intent.*

The first object in the construction of a will is to ascertain the intention of the testator. And a will will be construed by its four corners, and a scheme of a will will be adopted being in favor of equality which the law favors when such scheme is the apparent intention of the testator from a common sense point of view.

Argued March 16, 1897. Appeal, No. 39, March T., 1897, by Daniel N. Stephey, from the definitive decree of O. C. Franklin Co., affirming exceptions to auditor's report. Before Rice, P. J., Willard, Wickham, Beaver, Reeder, Orlady and Smith, JJ. Affirmed.

Exceptions to auditor's report. Before Stewart, P. J.

It appears from the report of the auditor that the question arose on the distribution of the estate of Daniel Mickley who died testate on the 29th day of May, A. D. 1895, in relation to the share passing to the children of Elizabeth Stephey, daughter of the decedent. The question being whether the children of Elizabeth Stephey who were recited by him as distributees under the will, took their mother's share, subject to the advancements made by the testator to her on loans, or only subject to advancements made to them after her death, the auditor holding that they took the full share of the mother less the advancements made to them after their mother's death. To this finding of the auditor, exceptions were filed, which were sustained by the orphans' court in an opinion by Stewart, P. J., and amended distribution made by the auditor in accordance with the decree of the court.

*Errors assigned* among others were (1) in sustaining the first exception filed to the report of the auditor, which exception is as

follows : " The learned auditor erred in not taking into account the advancement made by the testator to Elizabeth Stephey, and in not charging with said advancement the share of the heirs of Elizabeth Stephey. The exceptants contend that the testator intended that all his children, including his deceased daughter, Elizabeth Stephey, should be charged with the advancements made by him and recorded in his advancement book." (3) In sustaining the sixth exception filed to the report of the auditor, which exception is as follows: " The learned auditor erred in his exclusion of the evidence of Daniel Mickley. This evidence was competent to show the testator's intention with respect to the advancements he made to his family. For this purpose it was competent and should have been considered." (8) In confirming the amended report of the auditor, in so far as the said report charges the heirs of Elizabeth Stephey, deceased, with the advancements charged in the testator's book against Elizabeth Stephey, their mother, and deducts the same from their distributive shares, under the will of the testator.

*O. C. Bowers*, with him *J. R. Ruthrauff*, for appellant.—The bequest here is of personalty ; there is therefore no question as to what persons are meant by the " heirs of Mrs. Elizabeth Stephey, dec'd." They are those entitled to her estate under the statutes of distribution, viz : her three children, Daniel N. Stephey, Oscar H. Stephey and Anna M. Price, and the effect is the same as if the bequest were to " the children of Mrs. Elizabeth Stephey, dec'd," naming them : McKee's App., 104 Pa. 571; Baskin's App., 3 Pa. 304; Eby's App., 84 Pa. 241; Bender's App., 3 Grant, 510 ; Ashton's App., 134 Pa. 390 ; Dorrance's App., 154 Pa. 523.

Where there is no ambiguity in the terms of a will, a doubt suggested by extraneous circumstances cannot be permitted to effect its construction : Sponsler's App., 107 Pa. 95 ; Baker & Wheeler's App., 115 Pa. 590.

The question in expounding a will is, not what the testator meant, but what is the meaning of his words : Hancock's App., 112 Pa. 532.

The cardinal rule for the construction of wills is, that the intent of the testator must be gathered from the will itself : Baker & Wheeler's App. 115 Pa. 590.

*W. U. Brewer*, with him *W. T. Omwake*, for appellee.—The legacy given here is a substitutional one. It is given to the persons who, at the testator's death, are heirs of Elizabeth Stephey. If her father had died intestate the persons the law designates heirs and who thereby succeed to her share in the estate, by way of representation, would have taken her share subject to the advancement, and in no possible way could they have secured her share divested of this burden: Eshleman's App., 74 Pa. 42; Storey's App., 83 Pa. 89.

Looking into the will itself, it seems that its construction presents no serious difficulty. The testator intended that all the advancements made to his children and grandchildren, participating in the distribution, should be considered and accounted for, and in this manner should be determined the equal shares designated by him, and only by this method of distribution can there be the equality intended by the testator. From this, therefore, it results that the advancement made Mrs. Stephey, must be considered as if it were a part of the testator's estate in making the distribution. In short, it must be brought into hotchpot: Whitman's App., 2 Grant, 323; Price v. Douglass, 150 Mass. 96; Eichelberger's Est., 135 Pa. 160; Hughes's App., 57 Pa. 179; Wagner's App., 38 Pa. 122; Boyd's App., 83 Pa. 89; Fairlamb's App., 100 Pa. 385; Park's Est., 21 W. N. C. 227; Hill v. Bloom, 4 Cent. Rep. (N. J.) 845.

Even if the will left in doubt what the testator intended with respect to the advancement made to Mrs. Stephey, the court would adopt such construction as would make the distribution thereunder conform to a distribution under the intestate laws. There is always a presumption that a testator intends equality among his children and their heirs unless the will clearly evinces the contrary.

Technical rules of construction are disregarded when a strict adherence to them would overturn a testator's well defined scheme of distribution among children and their issue with equality for its central and controling purpose, and this is especially the case when the will is prepared by a layman: Knoble's Estate, 87 Pa. 51; Carpenter's Appeal, 170 Pa. 140; Suplee's Appeal, 16 W. N. C. 378; Grim's Appeal, 89 Pa. 333; Weaver's Appeal, 63 Pa. 309; Smith's Appeal, 23 Pa. 9; Passmore's Appeal, 23 Pa. 381; Long v. Labor, 8 Pa. 229.

OPINION BY BEAVER, J., April 19, 1897:

The single question, the kernel of each assignment of error in this case, is the construction of a sentence in the will of Daniel Mickley which is as follows: " To the following named persons I give and bequeath the residue or balance of my estate in such proportion as shall make the shares of each equal, after deducting from each so much as has already been given them (which amount is recorded in my book kept by me for that purpose) as follows: to Mrs. Kate Bell, Mrs. Mary Bell, Mrs. Susan Good, Jacob Summers, son of Sarah Summers, deceased, heirs of Mrs. Elizabeth Stephey, deceased, an equal proportion of one share, and to Daniel W. Mickley, Simon Mickley." The sole question is whether under the terms of this bequest the heirs of Mrs. Elizabeth Stephey take the share bequeathed to them in equal proportions subject to or freed from the burden of advancements made to the said Elizabeth and charged against her by the testator. It is claimed by the appellant that the heirs, who in this case are the children of Mrs. Elizabeth Stephey, being personæ designatæ, take their share, without deducting the advancements made by their grandfather to their mother in his lifetime.

The substance of this will was dictated by a plain layman to a scrivener who was not learned in the law. The instrument is singularly wanting in technical terms and expressions and, if construed by the person who wrote it or by any ordinary layman, there would probably be little difficulty in reaching a conclusion as to what the intention of the testator was, and it is only when the technical rules of strict construction are applied to the terms used that difficulties appear.

The first object in the construction of a will is to ascertain the intention of the testator. As was well said by BAILEY, J., in Wickham v. Turner, 2 D. & R. 398 (16 E. C. L. 96): " We certainly are not empowered to make a will for a testator, but we are empowered, and it is our duty also to construe the will he has made so as to give effect to that which upon the whole may reasonably be taken to have been his intention and object. We are to act either upon express words or upon a manifest intention, and where the language is at all doubtful in one part we are to construe that part by reference to and comparison with former parts (or latter) as a key to explain the particular

word which gives rise to the doubt entertained." In reaching
a conclusion as to the intention of the testator, as Lord KEN-
YON has forcibly expressed it, "You are to look into all the
four corners of the will." In the paragraph of the will in
question which follows the one already quoted the testator
provides that "The following named persons, having already
received their share and proportion of my estate, are not
considered in my will as follows: heirs of Abraham Mickley,
deceased, heirs of Henry Mickley and Mrs. Clara Funk." Care-
fully considering the will as a whole, it is very evident that
the main thought in the mind of the testator was equality in
the shares of his estate, and not equality among the individual
legatees ; and, in order to insure that equality, he makes as
part of his will, or at least as the means of establishing the equal-
ity of the shares into which his estate is to be divided, the book
of advancements which had been kept by him for that purpose.
In this book it is admitted that Elizabeth Stephey, his daughter,
is charged with advancements amounting to $2,280, begin-
ning in 1850 and ending in 1866, with a tombstone and cof-
fin, the latter presumably after her death. In the same book
are contained charges against Abraham Mickley extending
from 1855 to 1873, amounting to $3,735.35. In addition to
the advancements made to Elizabeth Stephey, as contained in
the book of the testator, he made advancements of $400 to each
of her three children Feb. 1st and Sept. 17, 1888, with which
they admit they should be charged and for which they gave
him receipts in the following form: "Received of Grandfather
Mickley my portion of my mother's legacy Three Hundred Dol-
lars," and a similar receipt for $100 each. It does not clearly
appear in the evidence when Elizabeth Stephey died but, as no
charge is made in the book against her after the one for the
tombstone and coffin, it would appear as if the advancements
were made for tombstone and coffin for her after her death.
This entry and the form of receipt which the grandfather took
from his grandchildren, who were the children of Elizabeth
Stephey and which antedates his will, would seem to indicate
what his intention was as to the share which the heirs of Eliz-
abeth Stephey were to take. The receipts are for each one's por-
tion of "my mother's legacy." It is true that the will is made
about five years after these receipts were given; but, taken in

connection with the book which was in evidence and to which
the testator specially refers in his will, they are in our opinion
significant. Looking "into the four corners of the will" the
court below reaches a conclusion as to its general scheme by
the reference to the heirs of Abraham Mickley who are said by
the testator to be "not considered in my will" "having already
received their share and proportion of my estate." In the book
of advancements referred to, as before stated, Abraham Mickley
is charged with the sum of $3,735.35. There is no evidence
whatever of any advancements having been made to his heirs
after his death. The court concludes therefore that the share
of Abraham's heirs, as referred to in the will, was exhausted by
the advancements made to their father in his lifetime. The ap-
pellant very ingeniously endeavors to destroy the force of the
position taken by the court below by arguing that, there being
no evidence in the book or elsewhere of advances being made
to the heirs of Abraham Mickley, it will not do to assume that
no such advances were made, and that it is also an assumption
to say that the advances charged to Abraham Mickley in the
book were regarded by the testator as those which influenced
him in not considering the heirs of Abraham Mickley in his will.
As to this it may be said that the general scheme of the will
being fairly apparent from a common sense standpoint, and that
scheme being in favor of the equality which the law favors, and
the fact of the advancements to Abraham Mickley affirmatively
appearing in the testator's book, this fact cannot be rebutted
by a mere assumption that there may have been other advance-
ments not charged anywhere made to the heirs of Abraham
Mickley after his death. Whilst it may be strictly and tech-
nically true that there is no evidence that "in point of fact
nothing had been advanced to the heirs of Abraham Mickley,"
it is quite as true that there is no evidence to show that any-
thing had been so advanced. The court below was, therefore,
in our opinion, justified in using the clause of the will referring
to the share of the heirs of Abraham Mickley and the facts relat-
ing thereto as they appear in the evidence as a help in the effort
to reach a conclusion as to the intention of the testator. We
have no doubt as to the correctness of the conclusion reached.
Fairlamb's Appeal, 100 Pa. 385, is in point and is a case in
which the conclusion reached was based upon grounds much

narrower than those upon which this case stands. The evident intent of the testator will be best carried out by distributing his estate in accordance with the last report of the auditor based upon the opinion of the court below.

The decree confirming that distribution is, therefore, affirmed, and the appeal dismissed at the costs of the appellant.