## Estate of Adam Rouser. Appeal of Methodist Episcopal Church.

*Will—Construction—Intent—Four corners—Extrinsic circumstances.*

The intent of the testator must be gathered from the will itself and where there is no ambiguity in the terms of the will a doubt suggested by extraneous circumstances cannot be permitted to affect its construction.

A bequest was to the "Methodist Episcopal Church to be used by said denomination for the spread and furtherance of the gospel." *Held*, that the words of the will demanded no extrinsic evidence to demonstrate the intent of the testator, which is disclosed, to designate the Methodist Episcopal Church as a denomination and not the Methodist Episcopal Church of Coraopolis, a local body or congregation.

Argued May 4, 1898. Appeal, No. 97, April T., 1898, by the Methodist Episcopal Church, from decree of O. C. Allegheny Co., May T., 1896, No. 46, in distribution in Adam Rouser's Estate. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Audit of a partial account of executors of Adam Rouser's estate. Before O. C. Allegheny Co.

The facts sufficiently appear in the opinion of the court.

The account showing for distribution $120.50, the court below awarded one half of the fund to the Free Will Baptist Church and one half to the Methodist Episcopal Church of Coraopolis. Methodist Episcopal Church appealed.

*Errors assigned* among others were (1) In dismissing the first exception, namely, "The court erred in decreeing the one half of the fund to the Methodist Episcopal Church of Coraopolis instead of the Methodist Episcopal Church." (3) In dismissing the third exception, namely, "The court erred in admitting parol testimony to explain the meaning of the words 'the Methodist Episcopal Church.'"

*N. W. Shafer*, for appellant.

*W. T. Tredway*, for appellee.

OPINION BY BEAVER, J., July 29, 1898:

The duty before us is a very simple one. It is to give practical effect to the will of the testator, as manifested in the second item thereof, which is as follows: "My will is that all my estate, both personal and real, and of whatsoever kind and nature, to be sold by my hereinafter executors at the best possible price, either by private or public sale, for the best price or prices that can be gotten for the same, and by proper deed or deeds of conveyance to be duly executed to the purchaser in fee simple; and, when the whole of my estate shall have been turned into money as aforesaid, then I will and direct that this sum shall be divided into two parts equally. One part I give and bequeath to the Free Will Baptist Church and to be used by the said denomination for the spread of the gospel, and the other half to be given to the Methodist Episcopal Church, and to be used by said denomination for the spread and furtherance of the gospel."

The immediate contention is as to the last clause of the last sentence in this item—what was the intention of the testator, when he used the words "and the other half to be given to the Methodist Episcopal Church and to be used by said denomination for the spread and furtherance of the gospel?"

It is to be noted that the testator not only names the recipient of his bounty but the manner in which and the object for which it is to be administered. He gives it to the Methodist Episcopal Church which is a body of Christians acting in an organized capacity which is as well known as any other denomination of Christians in the country. It is said that the corporate title of the church is "The Methodist Episcopal Church in the United States of America." The fund in the hands of the executor for distribution is claimed by the "Trustees of The Methodist Episcopal Church," a corporation created under the provisions of the laws of the state of Ohio, the pertinent parts of its articles of incorporation being as follows:

"First. The board of trustees hereby created shall consist of six ministers and six laymen in good and regular standing in the Methodist Episcopal Church, six of whom shall be appointed by the General Conference at each quadrennial session and to hold office till their successors shall have been regularly and duly appointed; said corporation to be known under the form

and style of 'Trustees of the Methodist Episcopal Church,' and Davis W. Clark, etc., ministers and laymen, are hereby elected and appointed trustees to constitute the board before named, which board shall have perpetual succession.

"Second. The said board of trustees, under their corporate name, shall have power to take and hold, by donation, gift, grant, devise or purchase, any property, real, personal or mixed, in any state of the United States, in behalf of and for the benefit of the Methodist Episcopal Church, and the same to manage, grant, convey, lease or otherwise dispose of, and to execute such trust or trusts as may be confided to said corporation, the whole to be under the supervision of and amenable to the General Conference.

"Third. The said board shall also be deemed competent to receive and administer any special benevolent trust in behalf of the church not otherwise provided for in the benevolent societies now existing, under the authority or by the sanction of the General Conference."

If the testator had had these articles of incorporation before him, he could scarcely have used more apt language in designating the recipient of his bounty. If, however, we were in doubt as to the proper recipient of the testator's bounty, as designated by him, further light would be thrown upon it by the manner in which it is to be administered, which, as he expresses it, is "to be used by said denomination." This seems to us to admit of but one interpretation, namely, that the church, as a whole, is to use the fund bequeathed to it and not a local organization within the denomination; but, as if to emphasize and restrict the use to which it is to be applied, he adds, "for the spread and furtherance of the gospel" which must mean, if used and interpreted in the ordinary sense, the diffusion of the gospel through the missionary operations of the church. If there were still doubt as to this interpretation, recourse is to be had to the preceding clause of the last sentence of this item of the will, in which the testator says: "One part I give and bequeath to the Free Will Baptist Church and to be used by the said denomination for the spread of the gospel." There seems to have been no difficulty in construing this portion of the will and in giving the fund which was applicable to the bequest therein contained to the Free Will Bap-

tist Church as a denomination, for the reason that no local church of the denomination was in existence in the neighborhood, but the fund applicable to the Methodist Episcopal Church is claimed by a local organization known as "The Methodist Episcopal Church of Coraopolis" and, in order to ascertain the testator's real intentions, resort is had to extrinsic evidence, in order to establish the fact that the local organization was in his mind at the time the will was made. In our opinion, it was not necessary to resort to this extrinsic evidence. The intention of the testator is to be gathered first from the language of the will itself in reference to the particular bequest under consideration. If there be difficulty in this, then resort is to be had to other parts of the will which can be used as an aid to its interpretation, and last of all when latent ambiguity exists, then to extrinsic evidence. It was said in Baker & Wheeler's Appeal, 115 Pa. 590 : "The cardinal rule for the construction of wills is that the intent of the testator must be gathered from the will itself. Than this rule there is probably no one that is supported by so great a multitude of authorities. Moreover it is said in Reck's Appeal, 78 Pa. 432, by Mr. Justice SHARSWOOD, that all mere technical rules of construction must give way to the plainly expressed intention of the testator, if that intention be lawful. Again, where there is no ambiguity in the terms of the will, a doubt suggested by extraneous circumstances cannot be permitted to affect its construction : Sponsler's Appeal, 107 Pa. 95." In Mickley's Estate, 4 Pa. Superior Ct. 550, we quoted from BAILEY, J., in Wickham v. Turner, 2 D. & R. 398 (16 E. C. L. 96) what is applicable here : "We certainly are not empowered to make a will for a testator, but we are empowered and it is our duty also to construe the will he has made, so as to give effect to that which, upon the whole, may reasonably be taken to have been his intention and object. We are to act, either upon express words or upon a manifest intention, and where the language is at all doubtful in one part, we are to construe that part by reference to and comparison with former parts, as a key to explain the particular word which gives rise to the doubt entertained."

We are of opinion that it was unnecessary to resort to evidence outside the will, in order to determine the intention of

the testator but, when we come to an examination of this testimony, the evidence of the testator's intentions cannot be doubted. The scrivener and the testator were both hard of hearing. They, therefore, discussed very carefully in the hearing of one of the subscribing witnesses just what the testator's intentions were. He not only mentioned the recipient of his bounty, but indicated the object for which it was to be used, "for the spread of the gospel and to convert the heathen." "He (the scrivener) asked him if he wanted it to go to the Coraopolis Church, and he said 'No' and waved his hand, 'to spread the gospel and convert the heathen.'" In our view of the case, the intention of the testator is easily gathered from the language of the will itself. If it were not so, we can see no reason why the orphans' court should award the fund due to the Free Will Baptist Church to the denomination at large and, upon language almost identical, award that to the Methodist Episcopal Church to the Methodist Episcopal Church of Coraopolis. It is not a question of the relative needs of the local congregation and the church at large. It is not a question of what a former minister of the local congregation supposed the testator expected to do, when he made his will.. The question, and the only question, before us is, What was the intention of the testator? Gathering this from the clause under consideration itself, from the previous clause and the necessary distribution under it, as well as from the extrinsic evidence, which in our view was not necessary, we have no hesitation in awarding the fund for distribution, small as it is, to the appellants, the "trustees of the Methodist Episcopal Church."

The several assignments of error are, therefore, all sustained and the decree of the court below is reversed and the fund for distribution, to wit: $60.25, is directed to be paid to the trustees of the Methodist Episcopal Church, the appellants; the costs to be paid by the appellee.