* ## Baker and Wheeler's Appeal.

1. The cardinal rule for the construction of wills is, that the intent of the testator must be gathered from the will itself.

2. All mere technical rules of construction must give way to the plainly expressed intention of the testator if that intention be lawful.

3. Where there is no ambiguity in the terms of the will, a doubt suggested by extraneous circumstances cannot be permitted to affect its construction.

4. A testator had a "property" in his father's will; a life estate with the power to dispose of the *corpus* by appointment. In his will he provided, "I leave and bequeath all my property (as stated in my father's will) to my wife." *Held*, (*a*) that it was not competent to show by extraneous evidence that he had other property to which his will might apply. (*b*) That there was no ambiguity in the will, and that it covered only such property as he had power to dispose of under his father's will.

February 24th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL from the Orphans' Court of *Chester county:* Of July Term 1886, No. 101.

Appeal of Virginia Baker and Elizabeth C. Wheeler from the decree of said court dismissing their exceptions to the report of the Auditor distributing the funds in the hands of the administrator, *c. t. a.*, of Gustavus C. Wheeler, deceased, and confirming said report.

H. T. Fairlamb, Esq., was appointed Auditor to distribute the funds in the hands of the administrator.

The following are the facts as they appeared before him:

Gustavus C. Wheeler, the decedent, was possessed, under the will of his father, William Wheeler, decedent of a life estate in certain property, with the power of appointing the reversion by any will he might make.

From his grand uncle, Charles Bennett, by deed of trust, and his mother, Marion Wheeler, he inherited other estates in his own right.

In August, 1865, the decedent was declared an habitual drunkard, and a committee was appointed, who gave bond with security for the estate which came into his hands.

The same person was also testamentary trustee under the will of William Wheeler, for Gustavus, of that part of the estate of William Wheeler, over which the power of appointment existed.

This trustee, and committee, died insolvent, and that part of William Wheeler's estate in his hands, was found on settling his affairs to have been dissipated.

R. E. Monaghan, Esq., was appointed committee to succeed him, and succeeded in recovering from the sureties of the former committee, the amount in his hands, as committee.

In 1869, Gustavus C. Wheeler made the following writing, which was proved as his will, and upon which this controversy arises :—

" Witness all persons I Gus C. Wheeler this day 2d day of October 1869, if I should be killed or otherwise lose my life, I leave and bequeath all my property (as stated in my father's will) to my wife Mary S. Wheeler.    GUS C. WHEELER."

Gus C. Wheeler died April 10th, 1884, leaving a widow, Mary S. Wheeler, but no children. His next of kin are his two sisters, H. Virginia Baker and Elizabeth Wheeler, the appellants. They and their brother Gustavus, being the only children of William Wheeler, deceased.

The administrator, *c. t. a.*, filed his account, showing a balance in his hands of $2,995.30, which sum includes, as ascertained by the Auditor, the sum of ninety dollers, which was derived from the estate of William Wheeler, in Virginia, after the death of his trustee, and was paid to the committee of Gustavus, instead of to a new trustee under the will.

The question presented to the Auditor was, what is the proper construction of the will of Gustavus C. Wheeler, deceased.

It was contended on behalf of the widow of the decedent, that by its terms the whole moneys for distribution passed to her; while it was claimed, on behalf of his sisters, that the will was merely an exercise of the power contained in the will of William Wheeler, and that nothing passed by the will of Gustavus C. Wheeler to his widow but the $90 referred to, which came from the estate of William Wheeler; that as to the estate which the testator held in his own right, he died intestate, and that it must be distributed under the intestate laws to the widow and sisters of the decedent.

The Auditor reported a distribution awarding the whole estate to the widow.

The sisters of the decedent filed exceptions to the report and distribution which the court after argument dismissed and confirmed the report, and entered a decree distributing the whole estate to the widow of the decedent. The sisters thereupon took this appeal, and assigned the said decree of the court for error.

*Thomas W. Pierce (John J. Gheen* and *Abner Pyle* with

him), for appellants.—The intention of the testator is clear and unambiguous. The Auditor and court below, have raised a doubt outside of the will of Gus C. Wheeler, and that of the father to which it refers.

Upon the face of the papers there is no doubt or ambiguity, and extraneous evidence as to intention, cannot be admitted.

The general rule is that parol evidence is admissible only to explain latent ambiguities, so as to apply the provisions of a will to the subject or person intended, when the description is defective, uncertain, or too general to be understood specifically : Best *v.* Hammond, 5 P. F. S., 409; Westhoff *v.* Dracount, 3 Watts, 240; Wigram on Wills, 118; Bartholomew's Appeal, 25 P. F. S., 169; Spousler's Appeal, 11 Out., 95; Hancock's Appeal, 2 Amerman, 532.

. The court below lays stress on the fact that he uses the word *my*—"all my property." As the power which he had was general and unlimited, it was not unnatural for him to call the property upon which it operated, my property.

A general power is, in regard to the estates which may be created by force of it, tantamount to a limitation in fee, not merely because it enables the donee to limit a fee, but because it enables him to give the fee to whom he pleases: Thompson *v.* Garwood, 3 Wharton, 305.

An unlimited power of disposal is sometimes said to be equivalent to ownership, because it enables the person who possesses it to make the property his own : Com'th *v.* Duffield, 2 Jones, 280.

*Alfred P. Reid*, for appellee.—"It has been long and well settled, and indeed it is a principle so consonant with reason, that the only wonder is that it should ever have been questioned, that all the surrounding circumstances of a testator—his family, the amount and character of his property—may and ought to be taken into consideration in giving a construction to the provisions of his will:" SHARSWOOD, J., in Postlethwaite's Appeal, 18 P. F. S., 480; Marshall's Appeal, 2 Barr, 388; Earp's Will, 1 Parsons, 453.

This is not admitting evidence of intention, as is contended by the appellants. It is only for the purpose of enabling the court to discover the intention by "putting themselves in the place of the party and to see how the terms of the instrument affect the property or subject-matter:" 1 Greenleaf on Evidence, sec. 287; Bingham's Appeal, 14 P. F. S., 349; Best *v.* Hammond, 5 Id., 412; Brownfield *v.* Brownfield, 8 Harris, 55; Newell's Appeal, 12 Id., 197.

Prior to the Act of June 4th, 1879, "the supplement to the Wills Act," a bequest of all his property would not have been

an execution of a power of appointment: 2 Jarman on Wills, p. 679.

The only thing stated in his father's will that the parenthetical claim can have reference to, is the ability to make a will. When a will is executed, the natural and reasonable presumption is that the testator does not intend to die intestate as to any of his property: Miller's Appeal, Leg. Int., Dec. 31st, 1886; Stehman et al. v. Stehman, 1 Watts, 466; Raudenbach's Appeal, 6 Norris, 51; Hofins v. Hofins, 11 Id., 305; Roland v. Miller, 4 Out., 50; Feny's Appeal, 6 Id., 207; Little's Appeal, 31 P. F. S., 190; Appeal of Board of Missions, 10 Norris, 507; Axford's Estate, 2 W. N. C., 663.

The presumption therefore is that when Gus C. Wheeler wrote this will, he intended to dispose of all his property. In construing the will the court will act upon that presumption, and, unless the language of the will absolutely forbids, it will so interpret it as to make it efficacious in the disposition of all his estate.

Mr. Justice GORDON delivered the opinion of the court March 14th, 1887.

The cardinal rule for the construction of wills is, that the intent of the testator must be gathered from the will itself. Than this rule there is probably no one that is supported by so great a multitude of authorities. Moreover, it is said in Reck's Appeal, 78 Pa., 432, by Mr. Justice SHARSWOOD, that all mere technical rules of construction must give way to the plainly expressed intention of the testator, if that intention be lawful. Again, where there is no ambiguity in the terms of the will, a doubt, suggested by extraneous circumstances, cannot be permitted to affect its construction: Sponsler's Appeal, 107 Pa., 95. With these rules thus stated for our guide, we turn to the examination of the will before us, which reads in this manner: "Witness all persons I Gus C. Wheeler this day 2d of October 1869, if I should be killed or otherwise lose my life, I leave and bequeath all my property (as stated in my father's will) to my wife Mary S. Wheeler. Gus C. Wheeler." Now, confining ourselves, as the authorities require us to do, strictly to the language here set forth, and we cannot perceive the slightest ambiguity, the testator had a "property" in his father's will, a life estate, with the power to dispose of the corpus by appointment. That he referred to this property and intended to dispose of it, no one pretends to question, and this would seem to fully cover the testator's design. How, then, are we to get beyond it? The court below seemed to think that, as he had a much larger estate than he thus devised, it must be assumed that of it he did not in-

tend to die intestate.   But how do we know this, or how do we know that he had any other estate than that devised? Certainly we can derive no such knowledge from the will, hence it must arise from some extraneous proof or circumstance which we are not at liberty to consider.   And why is it to be supposed that he did not intend to die intestate as to the balance of his property, if any such he had?   Had the devise been to a stranger, no one would have entertained the idea that he intended aught but what he wrote, the execution of the power found in his father's will; but because the devise was to his wife, the court determined to read the will without the limitation.   But it will be seen at a glance that such a conclusion could have been arrived at only through a total disregard of the above stated rules of construction.   It has made a new and, perhaps, better will for Gus C. Wheeler than he made for himself; nevertheless, as it is one that he did not make, we cannot adopt it.

The decree is reversed at the costs of the appellees, and a redistribution ordered.