## Pentz's Estate.

*Will—Legacy—Codicil.*

Where a testator makes provision in his will for his wife in accordance with an antenuptial agreement, but gives the wife no legacy and does not call her legatee, and he gives legacies to his children, and subsequently makes a codicil, the avowed purpose of which was " to even up his estate " among his children, and directs in the codicil that his residuary estate should be divided among the legatees under his will " as therein provided " the widow does not take a share of the residuary estate as a legatee under the will or codicil.

Argued April 23, 1901.     Appeal, No. 284, Jan. T., 1900, by Margaret Pentz, from decree of O. C. Clearfield Co., overruling exceptions to auditor's report in the estate of Andrew Pentz.     Before McCOLLUM, C. J., MITCHELL, FELL, BROWN and POTTER, JJ.     Affirmed.

Exceptions to auditor's report.

The auditor, J. B. McEnally, Esq., filed the following report:

Andrew Pentz, the testator, died February 10, 1898, aged eighty-seven years. He was married early in life and raised a family of six children. His wife died about 1877 or 1878. In November, 1881, he contracted a second marriage with Miss Margaret Stahle of Jefferson county, Pa., a lady then about thirty-five years of age. Immediately before their marriage he entered into a marriage settlement contract with her, dated November 3, 1881, by which he gave to her ten acres of land therein described, and bound himself to pay her $2,000. This settlement was duly recorded in Clearfield county, Pa., February 13, 1882, in misc. book " E," page 454, and again September 30, 1890, in deed book No. 58, page 277. His second wife had no children.

May 13, 1885, Andrew Pentz made his will, and November 17, 1894, executed a codicil to it. He did not have the will before him when the codicil was executed. February 10, 1898, he died, as already stated. March 5, 1898, Samuel G. Kuntz was qualified as executor. By paper dated September 22, 1898, and filed October 17, 1898, Margaret Pentz, his widow, accepted under the will.

These specific provisions in the will in favor of the widow are partly in the will and partly in the codicil. The provisions in the will of May 13, 1898, are as follows :

" Item. I give, devise and bequeath unto my beloved wife, Margaret Pentz, all that certain lot of land situate in Brady township, county aforesaid, known as the Daniel Ashenfelter property, which is fully described in a deed from Daniel Ashenfelter to me for the said property, which contains ten acres, more or less, and adjoining lands of Peter Rissinger John Platt, and land now owned by me. And I also give and bequeath unto my beloved wife Margaret, the sum of Two Thousand Dollars ($2000) in money, the same to be paid to her, as soon as the same can be realized out of my estate, without sacrificing the same to make sale thereof. These bequests to my wife being in conformity with a marriage settlement made and entered into by me with my said wife previously to our mar-

riage, and which was drawn by .......... Bell, Esq., of Punxsutawney, and left with him." 

The provisions in the codicil of November 17, 1894, are as follows :

" Sixth. I direct that my executors permit my wife Margaret to remain in and occupy my dwelling on my farm, or so much as she may need while she remains my widow, and shall give her at least two beds, bedding and all household furniture, carpets, cooking utensils, etc., sufficient to furnish the same completely, and in keeping with her station in life, and to give her annually 480 lbs. of flour, 200 lbs. of meat, potatoes, fruit, etc., off the farm to furnish her a comfortable living. Also one cow, her choice, and feed off the farm to keep it."

The testimony and admissions before the auditor shows that the widow left the homestead of decedent and will not live upon it ; also that she received the specific articles bequeathed to her in the sixth clause of the codicil. Also that the present cash value of the legacies mentioned in said sixth clause of the codicil, including the annual allowance of meat, flour, vegetables, and keeping of one cow, is $400. It is understood that instead of any annuity to which she may be entitled she would rather have its cash value, and that the other heirs or legatees are satisfied that such an adjustment be made.

It is also in evidence or admitted that in 1893, she, with her husband, sold the ten acres of land given to her by the marriage settlement and realized from it $900. Also that soon after her husband's death she received from the executor the $2,000 to which she was entitled under said marriage settlement. All these specific provisions in the will in her favor amount to $3,300 in cash value as admitted by counsel. All of them have already been received by her, except the annuity, or the cash value which represents the said annuity.

May 9, 1899, the first partial account of the executor was confirmed showing a balance in his hands of $3,262.16. It is admitted that there is also in the hands of the executor $130, being proceeds of the farm, and that if the widow is entitled to said sum it should be appropriated to her by the auditor.

Andrew Pentz, Sr., left surviving him his widow, Margaret Pentz, and five children living, viz : Joseph R. Pentz, Matilda

Jane Sprague (widow), Margaret Harker, Annie Elizabeth Shea and George W. Pentz. Also five grandchildren who were the children of his daughter, Susan, deceased, who had been the wife of John Lenkard. The names of these grandchildren are Samuel Lenkard, James Otis Lenkard, George W. Lenkard, Lillian Lenkard and Ella Lenkard.

From the admission of counsel before the auditor it would appear that all the residuary estate of the decedent, after deducting the above amount of $3,300 for the widow, would be probably about $13,000, more or less.

By an agreement made among the aforesaid children and grandchildren of the decedent in regard to that portion of the estate of the decedent which would belong to them or any of them under his will, they disregard the division and charges of testator in respect to themselves, and let what is coming to them be divided among the said five children living, and the children of his deceased daughter, Susan Lenkard, so that each living child shall get the one-sixth part, and the children of said Susan Lenkard the other one-sixth part. This relieves the auditor from the consideration of the provisions of the will as to the charges therein against them, and the distribution to them, without affecting the rights of the widow.

The provisions of the will and codicil as to the distribution of the residue next requires attention. The will of 1885, besides the provisions already mentioned in favor of his wife to carry out the marriage settlement, makes various bequests in favor of his children and some of his grandchildren. He bequeaths to each of his sons, Joseph and George the sum of $1.00. To the other children and grandchildren various sums amounting to $1,650; or with the $2.00 given to Joseph and George, makes the amount $1,652. He then provides that if any child or children should be borne to him by his present wife, the sum of $4,000 is bequeathed for the benefit of such child or children. In the latter part of the will he provides as follows:

" As to all the rest, residue and remainder of my estate that may remain after the devises and bequests herein are fully paid or provided for, such rest, residue and remainder of my property, I hereby give and bequeath the same, and it is my will that the same .be divided amongst my legatees hereinbefore mentioned in the following manner: The same shall be divided

in proportion as said legacies each bear to the whole remainder or residue of my estate, so that those to whom $1.00 is given, shall receive $2.00; those to whom $50.00 is given, shall have $100 out of the said residue or residuary fund if such fund shall exist, and other legacies in the same proportion."

In the codicil of 1894, after bequeathing to his two sons Joseph and George a certain judgment held by him against C. M. Garrison's estate et al., and directing his daughters, Annie Elizabeth Shea and Mrs. Sprague to be each charged with $1,000, and his daughter Margaret P. Harker to receive $300, out of the estate before any distribution is made, he provides in the fifth clause of the codicil as follows:

" Fifth. After above charges and payments are made, I direct that the residue of my estate shall be distributed among the legatees under my will as therein provided, except my sons John R. and George W. who are provided for above in clause one of this codicil. This codicil being made for the purpose of evening up my estate between my children."

The auditor allows to the widow, Margaret Pentz, $400 to cover whatever she may claim for annuity or otherwise under the sixth clause of the codicil to the will, and charges up to the executor the sum of $130 in his hands which was received from the farm, to be applied with so much of the other money in his hands as may be necessary to pay said $400 that is due to the widow.

It may be that the widow would not be entitled to so much as $400 inasmuch as many of the articles enumerated in clause six of the codicil to the will have already been received by her; but inasmuch as no evidence has been offered showing the value of the items so received by her, we give her the benefits of all doubts; and, therefore, award to her the said sum of $400.

These are the main facts. The only question is one of law as to the construction of the will, and the share of the widow under it. The division of what is left among the children and grandchildren who are legatees, is settled by their agreement.

## MATTERS OF LAW.

Our examination of the law in regard to the proper construction of the will leads us to the following conclusions:

1. The legatees who are entitled to the residuary part of this estate, after debts, expenses and specific legacies are paid, are those who are legatees under the will as written in 1885, except Joseph and George Pentz, who are excluded under the fifth clause of the codicil.

2. The testator by the fifth clause of the codicil of 1894, excluded his sons, Joseph and George, from receiving any part of the residuary estate. But beyond the effect arising from such exclusion and from the reduction in the amount of the residue under other clauses in the codicil, the legatees who take the residue and their proportionate shares remain as set forth in the will of 1885.

3. The word "legatees" is to have that meaning put upon it, which, from the whole will, in the light of the situation and circumstances existing when it was made, appears to have been intended by the testator.

4. The widow is not a legatee entitled to participate in the residuary portion of the estate unless she is a legatee under the will executed in 1885, before the codicil was made.

5. She was not such legatee within the meaning of the word "legatee" or "legatees" as used by the testator; and, therefore, is not entitled to share in the residuary portion of the estate.

6. The codicil does not purport to make any person residuary legatees who were not such legatees in the will in 1885; nor to change the standard of measurement of the shares of the legatees in the residuary estate, except so far as striking out the names of his sons as legatees would have such an effect. The sums which the codicil provides should be given to, or charged against, certain persons, affects only the amount which would be left to constitute the residuary portion of the estate.

7. The bequest to the widow in the sixth clause of the codicil, now estimated at a value of $400, is a legacy within the popular meaning of that term, and makes the widow legatee as to that bequest. This would entitle her to claim such proportionate part of the residuary estate as such legacy represents, if the meaning of the will and codicil taken together, is to divide the residuary part of the estate among all who received legacies under either the will or the codicil. But under the auditor's view, neither the will nor the codicil entitles any

legatees to a claim on the residuary estate, except those who were legatees under the will in 1885, before the codicil was written.

In support of our conclusions we say:

1. The will does not call the widow a legatee. It gives the residuary estate to the legatees "hereinbefore mentioned," but does not name them. Whether she is intended by the testator to be included under that name is a matter of mere inference. And such inference is not necessary.

2. The bequest to her in the will of 1885, is simply to pay the debt or obligation due her under the marriage settlement, and which she could enforce by will. In fact the ten acres of land devised and bequeathed to her were already her property under the terms of that settlement. The will could convey no better title than she already had. The $2,000 was simply an obligation he was bound to pay, and the testator declares the bequests to have been made in pursuance of the marriage settlement.

3. A legatee is one who receives a legacy. The ordinary popular meaning of a legacy and its usual legal signification, is a gift or gratuity,—not the payment of a debt or a provision to pay a debt. Where the meaning is uncertain it is reasonable to infer that the popular and ordinary meaning is intended, unless there is something to require a different construction. In support of this view we cite the following authorities: 2 Bouvier's Law Dictionary, 161. Legacy is defined to be a gift of personal property by last will or testament: Byrne v. Byrne, 3 S. & R. 60. Legacies are considered as gratuities: Zeigler v. Eckert, 6 Pa. 13. The law presumes every legacy is intended to be a pure gratuity: Brightly's Equity Jurisprudence, sec. 383. The law presumes every legacy is intended to be a pure gratuity, citing Byrne v. Byrne: 2 Story's Equity Jurisprudence, secs. 1099, 1100. Whatever is given by a will is prima facie to be intended as a bounty or benevolence: Hunter's Estate, 6 Pa. 97. The popular meaning of words is the best criterion of the intention of the testator: Biddle's App., 99 Pa. 532. To same effect and citing, 6 Pa. 97.

4. That which prompts a gift or legacy, and forms its basis, is the view which the testator entertains of the claim which the legatee has upon his bounty. When a father bequeaths legacies

to his children and heirs in unequal sums it indicates the proportionate extent to which he regards them entitled to his bounty. And if the residuary estate is left to them to be shared in the same proportion, it seems to be natural and reasonable as arising from the purpose of heart that actuates the testator in bestowing his property. But if the testator pays a debt or obligation by a provision in his will it cannot reasonably raise any presumption that he regards the creditor or obligee entitled to his bounty beyond the payment of the debt; and it is even more unreasonable to presume that the amount of the debt that is paid is to be regarded as a standard to measure the extent of such bounty. In this view the presumptions are naturally all against the testator making his widow a legatee of his residuary estate, to be measured on the basis of a previously existing obligation due her which the will directed to be paid.

5. As stated in Postlethwaite's Appeal, 68 Pa. 477, these surrounding circumstances of the testator, his family, the amount and character of his property, may be and ought to be taken into consideration in giving a construction to the provisions of his will. By considering such matters in this case, the construction claimed for the widow, which would give her the great body of the entire estate, after she had already been provided for by the marriage settlement, leaving the children and grandchildren only a small fraction of the estate, seems improbable and unreasonable. It also seems almost conclusive that the testator did not think that his widow was so amply provided for when he made the codicil to his will. In the sixth clause of the codicil he provides that she be permitted to occupy his dwelling on the farm, and have certain articles of furniture, and have annually 480 pounds of flour, 200 pounds of meat, potatoes, fruit, etc., off the farm to furnish her a comfortable living. Also one cow, her choice, and feed off the farm to keep it. This seems to be a reasonable provision if he supposed that the share previously allowed her out of his estate was simply what she got by the marriage settlement. But it seems hardly possible that the testator would make such provisions for his wife if he supposed he had already given her the greater part of his estate.

6. There are other well settled principles in relation to the

construction of wills, which, so far as they have any bearing on this case, we think are against the construction claimed for the widow.    Among them is this: 2 Brightly's Digest, p. 2391, pl. 227.

An heir at law can only be disinherited by expressed devises or necessary implication ; in the construction of a will of doubtful meaning, every fair intendment is to be made in his favor: Bender v. Dietrick, 7 W. & S. 284 ; Hitchcock v. Hitchcock, 35 Pa. 393 ; Cowles v. Cowles, 53 Pa. 175 ; Rupp v. Eberly, 79 Pa. 141 ; Luce v. Harris, 33 Leg. Int. 193.

In reaching conclusions in matter of fact and of law, we have disregarded the oral testimony of what was said by the testator in regard to the contents of his will and codicil, and also the testimony as to the oral declarations of Mrs. Margaret Pentz respecting the same contents of her share in the estate under the will. We do not regard this oral testimony as competent to affect the will or the codicil.

*Errors assigned* were in overruling exceptions to auditor's report.

*A. L. Cole*, with him *H. A. Moore*, for appellant.

*Thomas H. Murray*, with him *Allison O. Smith*, for appellee.

PER CURIAM, June 4, 1901 :

In this case the auditor's report was confirmed by the court. Upon our examination of it and of the will and codicil of the decedent to which the report relates, we are satisfied that a correct conclusion was reached by the auditor.    We therefore affirm the decree on his report.

Decree affirmed.