## Meetkirk's Estate.

Argued April 30, 1935.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES
and RHODES, JJ.

*H. Parker Sharp*, with him *Reed, Smith, Shaw & Mc-Clay*, for appellant.

*William A. Wilson*, with him *Wells Fay* and *Sterrett, Acheson & Jones*, for appellees.

OPINION BY STADTFELD, J., July 18, 1935:

By paragraphs second and third of her Will, Sarah J. Meetkirk, testatrix, provided as follows: "SECOND: For the purpose of keeping the family lot in Allegheny Cemetery and the graves therein in good condition, I give unto the Endowment Fund of the Allegheny Cemetery One Thousand (1,000) Dollars, the Cemetery to plant and keep the stones placed on said

lot in such condition as is consistent with the income earned by the amount placed in the Endowment. THIRD: In memory of my loving mother, Mrs. Agnes A. Meetkirk, I give and bequeath to the Columbia Hospital of Wilkinsburg, Pennsylvania, the sum of Ten Thousand (10,000) Dollars for the purpose of endowing a room in said hospital. The door of the said room shall have thereon a bronze plate bearing the following inscription: 'In memory of Mrs. Agnes A. Meetkirk, by her daughter, Sarah J. Meetkirk.' "

By paragraph fourth of her will, as modified by the codicil thereto, testatrix gave and bequeathed "the following legacies" therein specified to various friends and cousins, nine in number. By paragraphs fifth, sixth, seventh and eighth of her will, respectively, testatrix gave and bequeathed specified sums to four religious organizations. By the residuary clause, she provided as follows: "All the rest, residue and remainder of my estate of whatsoever kind and nature and wheresoever situate not hereinbefore disposed of, after deducting the foregoing legacies, I give and bequeath to all of the foregoing legatees in such proportion as the shares herein given them shall bear to my entire estate. Should there be no residuary estate or not sufficient money to pay all of the aforesaid legacies in full, the same shall abate in such proportion as the particular legacy bears to my entire estate."

Decedent's estate is sufficient to pay only about sixty-five per cent of all the amounts bequeathed in her will.

On April 30, 1934, the court, in an opinion by TRIMBLE, P. J., entered a decree of distribution under the terms of which the bequests to the cemetery and hospital were to be paid in full and the remainder was to be distributed proportionately to the remaining legatees under testatrix's will.

On May 10, 1934, appellant and nine other legatees, filed Exceptions to the decree of distribution, and on

May 14, 1934, exceptants filed a petition that the decree of distribution be set aside and that they be allowed to produce evidence in support of their contention that all bequests under the terms of decedent's Will must abate equally. To this petition, Columbia Hospital and Allegheny Cemetery filed demurrers which the court treated as preliminary objections.

At the hearing on June 18, 1934, petitioners introduced testimony to the effect that a certain legatee had performed numerous acts of kindness for decedent and decedent's mother, which went far beyond the bounds of ordinary friendship, and had never received any compensation for what she had done for decedent; that decedent was extremely fond of another legatee and that they referred to each other as "aunt" and "nephew"; that another legatee had also performed numerous acts of kindness for decedent which went far beyond the bounds of ordinary friendship; and that decedent was for many years an active member of Franklin Methodist Episcopal Church of Ingomar, another of petitioners. This testimony was admitted, subject to the objection of Columbia Hospital and of Allegheny Cemetery that it was irrelevant and immaterial.

On July 17, 1934, the court made an order dismissing the petition without prejudice to the renewal of the exceptions theretofore filed to the decree of distribution, which exceptions were duly renewed.

On October 11, 1934, the court in banc entered a final decree, dismissing the exceptions and affirming the decree of the auditing judge. From this decree, Albert Scott Gibbs, one of the legatees, has taken this appeal.

The sole question in this case is whether, when testatrix provided in the second paragraph of section eight of her will that if her estate should not be sufficient "to pay all of the aforesaid legacies in full, the same shall abate in such proportion as the particular legacy bears to my estate," she intended to exclude from

this provision for abatement the bequest to the cemetery and the bequest to the hospital.

As stated by the Supreme Court in Appeal of the Trustees of the University of Pennsylvania, 97 Pa. 187, 299 (1881): ".. . . . . It is always a question of intention, and when the intent of the testator is manifest to give one general legatee priority over others that intention shall prevail."

The contention of appellant that the provisions of paragraphs second, third, fourth, fifth, sixth and seventh of the will, each and every one, constitute "legacies," and the recipient "legatees" is beside the question if by the terms of the Will testatrix indicated a distinction between any of the bequests.

As was said in the late case of Boyer et al. v. Campbell, 312 Pa. 460, 462, 167 A. 284: "The first consideration in construing a will is to give effect to the intention of the testator, and where, as here, that intention is expressed in plain language, no technical rules of construction are necessary: Leech's Est., 274 Pa. 369; Price's Est., 279 Pa. 511; Bumm's Est., 306 Pa. 269." Also in Kemerer's Estate, 251 Pa. 282, 284, 96 A. 654: "The parol evidence received in the court below as to what testator meant by the word 'estate' was clearly inadmissible, as conceded in the opinion of the court below, to aid in construing the will inasmuch as, where there is no ambiguity in the terms used, the intent of a testator must be gathered from the terms of the will itself and cannot be changed or explained by parol: Best v. Hammond, 55 Pa. 409; Baker's App., 115 Pa. 590; Howe's App., 126 Pa. 233." See Carson's Estate, 227 Pa. 543, 76 A. 419.

As stated by Mr. Justice SCHAFFER, speaking for the court in Scott's Estate, 313 Pa. 155, 157, 169 A. 73 (1933) "The rule sought to be invoked is one which operates where there is nothing in the will to show a different intention (Garrett v. Rex, 6 Watts 14, 17;

Fell's Est., 6 Pa. Superior Ct. 192, 194), and should not operate to frustrate the testator's intent, if it can be gathered from the will, as we think it can in this case. 'In the construction of wills the great general and controlling rule is that the intent of the testator shall prevail. And by his intent is meant his actual intent. It is often said, . . . . . . as quoted in Hancock's App., 112 Pa. 532 . . . . . . 'The question in expounding a will is not what the testator meant, but what is the meaning of his words.' But by this it was never intended to say that the testator's meaning when apparent can be disregarded, but that it cannot be got at aliunde, by what he might have meant, or even what under the circumstances perhaps he would have meant, but only by what he said. The search is confined to his language, but its object is still his meaning."

As is said in Rood on Wills, par. 413: "It has been declared a fundamental maxim, the first and the greatest rule, the sovereign guide, the polar star, in giving effect to a will, that the intention of the testator as expressed in the will is to be fully and punctually observed so far as it is consistent with the established rules of law . . . . . . His plain intention must be given effect though he has misused or omitted words, or made errors in spelling, punctuation, or grammatical form. In so far then as the intention is clearly expressed, there is no room for resort to legal rules of construction."

In Pentz's Estate, 200 Pa. 2, 7, 49 A. 361, it was held: "The word 'legatees' is to have that meaning put upon it, which, from the whole will, in the light of the situation and circumstances existing when it was made, appears to have been intended by the testator."

The words "legacies" or "legatees" are not used in the will until the fourth paragraph. In that paragraph, she gives and bequeaths "the following legacies to my various friends and cousins;" then follows a list

of the fifteen individuals. She then provides "should any of the aforesaid legatees be dead at my death, legacies with the exception of that already disposed of in the case of Albert Scott Gibbs and Mrs. Adah Gibbs, I direct that the same revert unto my residuary estate hereinafter mentioned." While the Allegheny Cemetery and the Columbia Hospital technically fulfill the designation of "aforesaid legatees" it is apparent they were not so considered by her. They are both corporations and therefore could not in contemplation "be dead at my death."

In the second paragraph she gives to the "Endowment Fund" of the Cemetery $1,000 for the preservation of the lot and the graves therein. In the third paragraph she gives $10,000 to the Columbia Hospital "for the purpose of endowing a room in memory of my loving mother." In both paragraphs the use of the fund is specified and restricted and has the thought of permanency. All of the bequests under the fourth paragraph are without restriction as to use by the various legatees. Likewise in the fifth, sixth and seventh paragraphs wherein she makes bequests for charitable purposes, excepting that in the fifth paragraph she directs the sum of $500 to be applied to the Parsonage Fund if the same has not been fully paid by the Church, "and if the same has been fully paid, then to be used by the Church for such purposes as it shall see fit."

It is clear from the language used and the purposes designated that the testatrix has distinguished between the gifts she made for memorials or endowments and those to legatees, and that she did not, by her residuary clause, in referring to the "foregoing legacies" intend that the bequests for endowments or memorials should be increased or diminished. As said in the opinion of the learned president judge of the lower court: "There is an additional reason for holding that the memorials are preferred in that it seems to be absurd to suppose

that this testatrix would place friends and cousins on an equality with her mother. It is fair to presume that she would consider the memorial to her mother as something of greater value to her than the pecuniary legacies to friends and that she emphasized this by omitting to designate the two memorials as legacies or the recipients as legatees."

As said by Mr. Justice FRAZER in Elmore's Estate, 292 Pa. 571, 573, 141 A. 478: "The general rule, as provided in section 20 of the Fiduciaries Act of June 7, 1917, P. L. 447, is that where the estate is insufficient to pay all the pecuniary legacies in full, they shall abate pro rata unless it shall be otherwise provided by the will. This is merely a restatement of the rule as it existed at common law, which likewise, recognized the right of the testator to provide against deficiency of assets by giving pro rata to some of the objects of his bounty to the exclusion of others. As in all other cases of construction of wills, the question of intention prevails, and when the intent of testator is manifest to give one legatee a preference over others, such intention must prevail: Appeal of University of Pennsylvania, 97 Pa. 187, 200."

We fully agree with the conclusion reached by the lower court. The assignments of error are overruled and the decree of the lower court is affirmed. Costs to be paid by appellant.

Judges KELLER and PARKER dissented.