## Hickman's Estate.

Argued April 30, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Andrew G. Smith,* for appellants.

*James F. Coyle,* with him *John G. Bell,* for appellee.

OPINION BY KELLER, P. J., July 10, 1936:

The testatrix was the widow of John A. Hickman. By his will he bequeathed to her all his household furniture, and a life estate in the residue of his estate, without giving security, and with the right to dispose of the same[1] by her last will and testament.

By her will she disposed of her husband's estate in conjunction with her own. She gave, in paragraph 2, "my stock in the Bridgeville Trust Company" to four second cousins, Thomas Weaver, Jr., Park Hickman, W. C. Caldwell and Alice Weaver Patterson, these appellants, "to be equally divided among them".

In paragraph 3, she directed her executor to sell her real estate, and "The proceeds of the sale of my real estate and residue of my personal property I hereby devise and bequeath as follows": naming eight legatees

---

[1] Subject to bequests of $3,000, payable at her death.

with legacies in amounts varying from $150 to $600, and totalling $2,650. In the same paragraph she bequeathed to the nephews and nieces of her husband, John A. Hickman, the furniture which had been his; and directed that her own furniture,—as distinguished from that which she had received from her husband—should not be sold but be distributed by her executor in accordance with a paper she had placed in his hands.

In paragraph 4 she directed that the legacies of $3,000 bequeathed by her husband, payable at her death, should be paid in accordance with her husband's will.

And in paragraph 5 she provided: "In case my estate should be more than sufficient to pay the legacies mentioned in my will, I direct that each legacy be increased in proportion and in case it is less than sufficient to pay all the legacies that each legacy be reduced in the same proportion."

The estate proved more than sufficient to pay the legacies and the court distributed the excess among the eight general or pecuniary legatees named in the disposal of the proceeds of sale of the real estate and the residue of the personal property. The four second cousins, to whom testatrix bequeathed the Bridgeville Trust Company stock, appealed. We think the decree of the court below was right.

The bequest of the Bridgeville Trust Company stock was specific. Each legatee was to have one-fourth of her stock—three shares each. She put no valuation on this stock, but it was appraised in the inventory at $100 a share. Being specific, the stock could not be used to pay general legacies at all, nor the debts of the decedent until after all her residuary estate was exhausted: McGlaughlin's Exr. v. McGlaughlin's Admr., 24 Pa. 20; Moore v. Gilbert, 287 Pa. 102, 134 A. 462; Kenworthy's Est., 52 Pa. Superior Ct. 152; 69 C. J. 990-991, sec. 2193. The general legacies would be first affected by a deficiency of assets: Torchiana's Est., 292

Pa. 470, 141 A. 294; Penna. Company's Appeal, 109
Pa. 479. If she had disposed of the trust company
stock in her lifetime the bequest would have been
adeemed: Hoke v. Herman, 21 Pa. 301. The same thing
may be said of the bequests of her furniture—both that
which she got from her husband and that not so de-
rived. They were likewise specific bequests, not to be
used for payment of general legacies at all, nor for pay-
ment of her debts until her residuary estate was ex-
hausted, and adeemed if she disposed of it in her life-
time. No money would be needed to *pay* these specific
bequests of trust company stock and furniture; they
would simply be handed over to the legatees. But the
general legacies would be *paid* by the executor out of
moneys remaining after payment of debts and expenses.

We think that when, in the fifth paragraph of her
will, the testatrix used the term 'legacies' in connec-
ton with the uncertainty in her mind as to whether her
estate would be more or less than enough to *pay* them,
she intended those legacies that would be *paid* by her
executor and would be subject to abatement in case her
estate would prove insufficient to pay all, and made
sure that all would abate proportionately. She could
not have had in mind the specific bequests of the trust
company stock and the furniture, for she knew they
would not be subject to abatement along with the gen-
eral legacies provided for in paragraph 3, and would be
turned over in kind. And by the same token she intended
that if there was an excess of assets over and above
the amount needed to *pay* the legacies provided for
out of her residuary estate, it should be divided propor-
tionately among those who would have suffered an
abatement if there had been a deficit, namely, among
the general legacies which she directed to be paid out of
the proceeds of sale of her real estate and her residuary
estate.

If the general legacies had all been for the same

amount, she could have secured the desired result by dividing her residuary estate into eight parts. Not being for the same amount, she accomplished the same purpose by directing that they should share proportionately in any excess, and abate proportionately in any deficiency, in the settlement of the estate.

We think the circumstances show even more clearly than in Meetkirk's Est., 118 Pa. Superior Ct. 562, 180 A. 172, which was also decided by the lower court, the separation of certain—in the present case, specific—legacies from the general legacies, which were to be increased or decreased in accordance with the condition of the estate.

We concur in the following paragraphs from the majority opinion of the court below: "The words of the bequest to these exceptants are 'my stock in the Bridgeville Trust Company'. The legacy of this stock is therefore a specific one, as is well settled by authority of the text books and numerous decisions of the Courts. Such legacies are in a special class and do not abate to pay general legacies, and abate to pay debts only after all personal property not specifically bequeathed is exhausted: Rood on Wills, par. 744. This stock was the only property that could satisfy the gift, and when exceptants received it they could take nothing further under the will. If this stock were extinguished and did not exist at the death of the testatrix the specific legacies would be adeemed and the legatees named in the second paragraph would take nothing. If the value of the stock had depreciated after the death of testatrix and before a decree of distribution of decedent's property could be made the legatees of the stock would have no claim for reimbursement from the other property of decedent and to the detriment of the general legacies set forth in the third paragraph of the will. We believe the intention of testatrix was that the provision for increasing or decreasing the legacies related only to

general legacies and would not apply to the specific legacy of the trust company stock nor to the gifts of furniture in the eighth and ninth [clauses of the third paragraph] of the will. There was probably no uncertainty in the mind of testatrix but that the Bridgeville Trust Company stock would become the property of the legatees named. There was less certainty that the proceeds of the sale of the real estate and the residue of the personal property would pay the legacies in paragraph third, consequently testatrix made the conditional provision contained in the fifth paragraph."

The decree is affirmed at the costs of the appellants.