## Taheny's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger and Ladner, JJ.

*Francis J. Walsh*, for petitioner.

*George B. Clothier* of *Edmonds, Obermayer & Rebmann*, and *James J. Hayes*, contra.

BOLGER, J., December 11, 1942.—This is a petition for review of adjudications filed February 27, 1931, and September 5, 1935, in order that the petitioner may claim priority for a legacy given in trust for the benefit of testatrix' son, now deceased. Preliminary objections have been filed raising the questions hereinafter disposed of, and an answer has been filed upon the merits. This latter is disregarded since the case is decided on the preliminary objections alone.

By her will the testatrix gave $120,000 to her trustee, in trust, to pay over the income weekly to her son, James E. Taheny, for life, with remainder to his issue, or if none, to certain charitable institutions.

James E. Taheny died January 31, 1936, without issue. The petitioner is his executrix and if the claim for priority is successful the estate of the deceased son will be entitled to sums of income over and above the amounts which he actually received in his lifetime.

Other pecuniary legacies aggregating $147,000 were given by the will to collaterals, charities et al., so that at the time of testatrix's death $267,000 would have been required to pay all legacies in full.

The first account of the executor showed a balance of principal of $148,051.90, which amount, less a reservation of $20,000 to meet possible income and inheritance taxes, and the payment of certain small claims, was awarded by Judge Lamorelle in the adjudication of February 27, 1931, to the pecuniary legatees in percentages to be indicated in a schedule of distribution which the adjudication directed should be filed.

The executor did not, as directed by Judge Lamorelle, prepare a schedule of distribution, but filed a second account which included the balances which had already been awarded by the adjudication of the first account.

Judge Marx, in his adjudication filed September 5, 1935, made the following order:

"In the circumstances, the present account will be treated as a supplement to the first account, and the accountant is directed to comply with the previous order to file a schedule of distribution."

On September 20, 1935, James E. Taheny, the present petitioner's decedent, filed an exception to the adjudication of September 5, 1935, because the executor and trustee had invested the moneys of the estate in various mortgages, and because of the payment of cash to other legatees. This exception has not been prosecuted.

A schedule of distribution as directed by Judge Lamorelle was filed August 15, 1940, and an amended schedule on August 19, 1941. Neither has been approved by the court pending a hearing which will be had as to whether said schedule, as amended, is correct and in conformity with the adjudications of Judges Lamorelle and Marx. Apparently, 45 percent in cash has been paid to most of the pecuniary legatees, and amounts over and above 45 percent have been paid to others, which preferential payments are contrary to the directions of said adjudications.

Preliminary objections had been filed by certain of the legatees to the petition for review on the ground that petitioner is barred from the relief prayed for, not only by laches and by the absence of averments necessary to support a petition for review, but more particularly by the absolute bar of the five-year limitation in section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447.

The applicable provisions of the five-year rule enunciated in section 48 of the Fiduciaries Act of 1917 are as follows:

"Within five years after the final decree confirming the original or supplementary account of any fiduciary, which has been or may be hereafter passed upon, petition of review being presented by such fiduciary or his legal representatives, or by any person interested therein, alleging errors in such account, or in any adjudication of the orphans' court . . . the orphans' court shall grant a rehearing of so much of said account, adjudication, or auditor's report . . . and give such relief as equity and justice may require, . . . Provided, That this act shall not extend to any cause when the balance found due shall have been actually paid and discharged by any fiduciary."

The decisions in Stetson's Estate, 305 Pa. 62, Elkins' Estate, 325 Pa. 373, and Colladay's Estate, 333 Pa. 218, cited against the petitioner, construe this act as

constituting a mandatory limitation of appeal admitting of no exception. But, as pointed out by petitioner, none of those cases involves the vital factor of the adjudication requiring the filing of a schedule of distribution. We, therefore, cannot accept these authorities as applying, especially in view of the decisions construing similar or identical phraseology in analogous legislation.

The General Appeal Act of May 19, 1897, P. L. 67, sec. 4, as amended May 11, 1927, P. L. 972, 12 PS §1136, reads as follows:

"No appeal shall be allowed in any case from an order, judgment, or decree of any court of common pleas or orphans' court, unless taken within three calendar months from the entry of the order, judgment, or decree appealed from. . . ."

More directly applicable is the appeal provision of section 22(a) of the Orphans' Court Act of June 7, 1917, P. L. 363, which is the handiwork of the same commissioners who drafted the Fiduciaries Act and other related legislation, all enacted by the same legislature in the same year:

"Any party aggrieved by the definitive sentence or decree of any orphans' court, or his legal representatives, may appeal therefrom to the proper appellate court within six months from the time of pronouncing such final sentence or decree. . . ." (This act is still in force, although the time limit has been reduced to three months.)

The application of these sections to appeals from orphans' courts has been frequently interpreted. In Graham's Estate, 294 Pa. 493, an adjudication which did not name the parties in the awards or fix their shares, but directed the filing of a schedule of distribution in which those elements should appear, was held to be interlocutory because indefinite and an appeal from it was held premature. The flat principle that the schedule of distribution, when required, is the final

decree from which an appeal will lie is laid down in Brown's Estate, 343 Pa. 19, Forsyth's Estate, 335 Pa. 281, Hood's Estate, 323 Pa. 253, Neafie's Estate, 325 Pa. 561, Maron's Estate, 317 Pa. 476, Levy's Estate, 307 Pa. 522, Kaeir's Estate, 264 Pa. 224, and Hoyt's Estate, 232 Pa. 189.

A decision of this court characterizing the schedule of distribution as the final decree is Reimel's Estate, 23 Dist. R. 675, citing Harvey's Estate, 11 Dist. R. 83, in holding that a petition for an order to pay presented before the schedule of distribution has been filed is premature.

The only decided case directly dealing with the subject is Bennis' Estate, no. 3038 of 1931, unreported. While the point was not necessary to the decision of the case, this court held that the language of the provisions of the two cited acts of assembly were identical, at least in intent and purpose, and therefore the five-year period dates from the approval of the schedule. Without entering into an extended analysis of the practice on the subject of schedules, including our rules of court, we are of opinion that when a schedule is directed to be filed it becomes an integral part of the adjudication, in fact invariably according to the terms of the adjudication. Here Judge Lamorelle's adjudication expressly provides that the schedule when filed shall form part of his adjudication.

Rule 3 (*b*) of this court, which relates to the filing of exceptions to schedules of distribution, provides, inter alia:

"If such exceptions are not filed within the time limited, the schedule of distribution shall become part of the adjudication, and distribution as therein provided shall be made forthwith."

Furthermore, a schedule fills in voids necessarily appearing in the adjudication, an instance of which is the exact amounts of shares of distributees which are determinative of the court to which appeal will lie—

whether Superior Court or Supreme Court. Schedules in fact are ordered only when the adjudication is inadequate to dispose of all phases of the case. It would therefore appear that such adjudications as direct the filing of schedules ordinarily lack the essential certainty of valid judgments and, therefore, the facts in Graham's Estate, supra, are not by any means unique, but on the contrary constitute the prevailing practice. A decree of distribution should fix the awards in order that an order to pay or an execution may issue thereon.

The present adjudications are vivid illustrations of this practice because Judge Lamorelle provided that certain questions should be left for determination in the schedule of distribution — whether 50 percent should be paid on the legacies or a lesser amount at the convenience of the estate, the balance being retained for future accounting upon the sale of the real estate; also there were left to be set forth in the schedule the names of the distributees and the amounts in dollars of their awards. It is clear, therefore, the adjudications could in no sense be classed as "final decrees".

It appears contradictory in terms to hold that an appeal, which is based upon the action of the lower court on exceptions to an adjudication, cannot be taken until a schedule of distribution is filed, the latter being held to be the final decision of the court, but from the foregoing it is clear that the practice is consistent.

We, therefore, find that the five-year rule has no application in this case.

With respect to the objection that laches is a bar to the relief prayed for by the petitioner, it appears from the record that Judge Lamorelle in his adjudication of February 27, 1931, recited that principal and income were insufficient to pay the pecuniary legacies in full and further that:

"Mr. Walsh, representing James E. Taheny, at the first audit, claimed that the trust legacy of $120,000

was entitled to priority over the other pecuniary legacies given in the will; but at the subsequent audit, he withdrew his claim; and distribution will be made pro rata among the trust legatee and the other pecuniary legatees."

Judge Marx, in his adjudication of September 5, 1935, again recited the insufficiency of assets to pay legacies.

It is the contention of petitioner that her decedent's claim for priority was withdrawn from Judge Lamorelle's consideration because of the expectation of the claimant that certain real estate on Kensington Avenue was worth $125,000 or more and when sold would bring enough to pay all legacies in full.

The real estate was finally sold for $35,000, ending any possibility of full payment to the pecuniary legatees.

It is evident from this recital of the record that the legatee had his day in court, with full opportunity to press his claim for priority. He withdrew his claim because of his high expectations of the amount which would be received from the sale of the real estate. This withdrawal was his own act, uninduced by the representations of others, and the disappointment of his expectations is not sufficient, after his death, to reinstate the claim upon the application of his personal representative.

While the petition must definitely be dismissed for the foregoing reasons, we feel that a review would be of no assistance to petitioner, as an examination of the claim on its merits shows no error of law on the face of the record.

Petitioner contends that the testatrix's direction that income be paid to her son "weekly" shows an intention to give it priority over other legatees, and "is ready to offer declarations of the testatrix at the time of the making of the will that she intended her son, the life tenant, should be taken care of by a payment of $125

per week prior to the payment of any other legacy for the term of his natural life".

The Fiduciaries Act of June 7, 1917, P. L. 447, sec. 20, provides:

"If, after deducting the amount of debts of the testator and the expenses of administration, the residue shall not be sufficient to discharge all the pecuniary legacies bequeathed, an abatement shall be made in proportion to the legacies so given, unless it shall be otherwise provided by the will."

The statute is declaratory of the common-law rule. No preference can be assumed; it must clearly appear, either by express words or from fair construction of the will: Pennsylvania Company's Appeal, 109 Pa. 479.

The rule of abatement applicable to general legacies equally applies to a legacy to a child, and can only be evaded by strong expressions in the will, or manifest intention collected from its contents: Barry's Estate, 13 Phila. 310; Haddock's Estate, 17 Phila. 484; Bixenstein's Estate, 6 Dist. R. 19.

The direction for "weekly" payments is not alone evidence of an intention to prefer the son's income. It refers rather to the convenience of the son, or to the testatrix's desire to protect him under the spendthrift provisions of the will by not placing large sums of money in his hands.

Oral declarations of the testatrix are not admissible to prefer a legacy: Meetkirk's Estate, 118 Pa. Superior Ct. 562.

On the merits of the case, therefore, the petition should be dismissed.

The petition is dismissed.

VAN DUSEN, P. J., STEARNE and SINKLER, JJ., concurring—We agree with the conclusion reached in the opinion of the court, but since we believe that the part

of it dealing with the defense of the five-year rule is unnecessary to the decision of the case we withhold our concurrence in that respect.